Dorab N. GAZDER, Plaintiff,

v.

AIR INDIA & Hari M. Karl, Defendants.

No. 82 Civ. 6086(CES).

United States District Court, S.D. New York.

Nov. 10, 1983.

was a legitimate governmental purpose.

Silvera, Brooks & Latimer, New York City, for plaintiff; Trevor L. Brooks, New York City, of counsel.

Poletti, Freidin, Prashker & Gartner, New York City, for defendants; William E. Malarkey, New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

This is a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

1.  According to the complaint, plaintiff has been a United States resident for twenty-two years.

2.  Air India is a corporation wholly owned by the government of the State of India. The general superintendence, direction and management of Air India is vested in a Board of Directors, the membership of which is appointed by the Central Government of India. *See,* Reply Memorandum in Support of Defendant's Motion to Dismiss at 3–6.

3.  The ADEA defines an employer as:
    ... a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided,* That prior to

In his complaint, plaintiff Dorab Gazder, a United States resident,[1] alleges that he was wrongfully discharged from employment with Air India. At the time of his discharge, plaintiff was sixty years old. Plaintiff contends that he was fired in violation of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 623, *et seq.* (1976).

In its motion to dismiss, defendant argues that the definition of employer contained in section 630(b) of the ADEA does not include an entity such as Air India which, because of its governmental status,[2] is an instrumentality of a foreign state as defined by the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* Defendant contends that it is therefore not bound by the provisions of the Act.[3]

■ For the reasons below, we conclude that Air India, an instrumentality of the foreign state of India, is an employer within the meaning of the Age Discrimination in Employment Act, and is thus subject to the Act's provisions.[4]

Section 1605 of the Foreign Sovereign Immunities Act ("FSIA"), *supra,* provides that foreign states shall not be immune from the jurisdiction of American courts in any action based upon their commercial activity in the United States, 28 U.S.C. § 1605(a)(2), with the commercial character of the activity determined by reference to its "nature". 28 U.S.C. § 1603(d). The House Report commented:

> June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.
> 29 U.S.C. § 630(b).

4.  Plaintiff also requests leave to amend his complaint to invoke 28 U.S.C. § 1330(a) as the proper basis for jurisdiction. This leave is granted in accordance with the permissive pleading provision of Fed.R.Civ.P. 15(a).

Paragraph (c) of § 1603 defines the term "commercial activity" as including a broad spectrum of endeavor, from an individual commercial transaction or act to a regular course of commercial conduct. A "regular course of commercial conduct" includes the carrying on of a commercial enterprise such as a mineral extraction company, *an airline* or a state trading corporation.

H.Rep. No. 94–1487, 94th Cong., 2d Sess. 16 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6614 (emphasis added). Section 1606 of the FSIA further provides that, excepting punitive damages, "as to any claim for relief with respect to which a foreign state is not entitled to immunity under sections 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private person under like circumstances."

Neither party disputes the fact that, as an instrumentality engaged in commercial activity, Air India may be brought, in personam, within the jurisdiction of American courts. Defendant argues, however, that Air India "never has been and is not now a covered 'person' or 'employer' as those terms define the scope of applicability of the ADEA." Reply Memorandum in Support of Defendant's Motion to Dismiss at 6. Defendant's argument may be summarized as follows. Air India is analogous to a foreign government. The ADEA, as originally enacted, specifically excluded the United States government and the individual state governments from its coverage. In 1974 the Act was amended to include state and local governments within the ADEA provisions,[5] and a new section was added to the Act to provide for vindication of age discrimination claims against the federal government. *See* 29 U.S.C. § 633a (Supp. II 1978). However, neither the original act nor the subsequent amendments affirmatively included instrumentalities of foreign states within the definition of employer. Defendant argues that absent a clearly expressed intention of Congress to include foreign states, we should hold that Congress meant to exclude them.

■ Courts faced with the task of statutory construction should endeavor to interpret the statute in question in light of the purposes that Congress sought to serve by its enactment. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Ram v. Blum*, 533 F.Supp. 933 (S.D.N.Y.1982). The ADEA was enacted to "promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment ..." 29 U.S.C. § 621(b). In urging Congress to extend coverage of the Act of state and local governments, former President Nixon stated:

> Discrimination based on age ... can be as great an evil in our society as discrimination based on race or religion or any other characteristic which ignores a person's unique status as an individual and treats him or her as a member of some arbitrarily defined group. Especially in the employment field, discrimination based on age is crucial and self-defeating; it destroys the spirit of those who want to work and it denies the Nation the contribution they could make if they were working.

H.Rep. No. 93–913, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2811, 2849. In our interpretation of the ADEA, we must, therefore, seek to effectuate, not interfere with, the Act's "remedial and humanitarian" goal of eliminating age discrimination in employment. *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), *aff'd*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y. 1976), *aff'd*, 608 F.2d 1369 (2nd Cir.1979).

■ In keeping with the liberal construction urged upon the courts when interpreting legislation designed to afford a remedy for the kind of injury alleged by the plaintiff, *see, e.g., Sartin v. Columbus Utilities*

---

**5.** *See, supra,* n. 3.

*Commission,* 421 F.Supp. 393 (N.D.Miss. 1976), *aff'd,* 573 F.2d 84 (5th Cir.1978); *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92 (8th Cir.1975), we feel that, absent a clear statement of congressional intent to *exclude* employers such as Air India from section 630, we must not deny to plaintiff a cause of action under the Act. With this principle in mind, we note first that instrumentalities of foreign states engaged in commercial activity within the territorial United States are not within the enumerated exclusions to the term "employer" in the Act.[6] Second, defendant has not demonstrated, nor have we found, any evidence of congressional intent to exclude foreign government owned corporations from the coverage of the ADEA.[7] *Compare United States v. United Mine Workers,* 330 U.S. 258, 279, 67 S.Ct. 677, 689, 91 L.Ed. 884 (1947) (legislative history of the Norris La-Guardia Act clearly evinced congressional intent to exclude the Federal Government from the Act's scope). Finally, 28 U.S.C. § 1606 of the FSIA, which provides that foreign states engaged in commercial activity shall be liable "in the same manner and to the same extent as a *private person* under like circumstances," (emphasis added), further supports our conclusion that Air India is not exempt from the provisions of ADEA.[8] *Cf., State Bank of India,* 229 NLRB No. 127 (1977).[9]

*McCulloch v. Sociedad Nacional,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), the principal case relied on by defendant, is not controlling here. In that case, the Court considered whether the provisions of the National Labor Relations Act ("NLRA") extended to the maritime operations of foreign flag ships employing alien seamen. The crew in question was entirely composed of Honduran citizens that claimed Honduras as their residence. The Court held that the jurisdictional provisions of the NLRA did not apply, citing its previous holding in *Benz v. Compania Nanera Hidalgo,* 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957). In *Benz,* the Court concluded that the legislative history of the Act "inescapably describes the boundaries of the Act as including only the workingmen of our own country and its possessions." *Id.,* at 144, 77 S.Ct. at 703. Both of these cases dealt with foreign employees of foreign companies that only had tangential contacts with the United States by virtue of entry into American waters. Neither case addressed the issue presented here: whether instrumentalities of foreign states engaged in commercial activity with-

---

6. *See, supra,* n. 3.

7. The original ADEA exempted state and local governments from its scope in order not to preempt individual state attempts to remedy age discrimination violations. The 1974 amendment was intended to provide a cohesive federal statutory framework for vindication of age discrimination claims, not to override more liberal state laws, thereby giving claimants the choice between proceeding under state or federal law. *See,* Sen.Rep. No. 95–493, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 504, 508–510.

8. Defendant cites *Champaigna-Urbana News Agency Inc. v. J.L. Cummins News Company, Inc.,* 479 F.Supp. 281 (C.D.Ill.1979), *aff'd,* 632 F.2d 680 (7th Cir.1980) for the proposition that statutes which divest pre-existing rights or privileges will not be applied to a sovereign without express words to that effect. It is true, as *Champaigna-Urbana* holds, that waivers of sovereign immunity cannot be implied, nor can the United States be sued without statutory consent. However, sections 1605 and 1606 of the FSIA manifest congressional intent to deny sovereign immunity to foreign states in cases where the action is based upon the foreign state's commercial activity. In determining Air India's rights in this instance, we believe we must view it as we would "a private person under like circumstances."

9. In this case, the NLRB reversed its prior holdings and found the State Bank of India, an instrumentality of a foreign state engaged in commercial activity in the United States, to be an employer as defined by the National Labor Relations Act, 29 U.S.C. § 152(2). Defendant argues that the Court should not consider this case to be binding precedent as it has not been judicially approved. Defendant also argues that Congress amended the ADEA in light of prior NLRB decisions holding that foreign governments were not employers as defined by the National Labor Relations Act. We have found, however, no legislative history that supports this position.

in the territorial United States are exempt from the provisions of our employment discrimination laws.[10]

In conclusion, we hold that Air India is an employer within the meaning of section 630(b) of the Age Discrimination in Employment Act. In addition to the reasons above, we note the following: the incidence of nationalization of foreign industry is growing. The expansion of nationalized industries to the United States is increasing at the same time.[11] Undoubtedly, as a result, increasing numbers of American citizens and residents are finding themselves employed by such industries. To construe the ADEA to exclude defendant from its scope would deny to these workers an important statutory right—the right to be treated in employment on the basis of individual ability rather than on the basis of stereotypes about age. The plain meaning of the language of the ADEA, the Act's legislative history, and the public policy underlying the Act counsel against such a construction.

Plaintiff's motion to amend his complaint is hereby granted, and defendant's motion to dismiss is denied.

SO ORDERED.

---

**10.** Since we find *McCulloch* to be inapposite, defendant's argument that Congress was presumed to be aware that judicial construction excluded foreign states from American employment discrimination laws is not applicable here. We presume that Congress still intends foreign states with foreign employees who are outside of the territorial United States to be beyond the scope of the National Labor Relations Act.

**11.** The House Committee on the Judiciary noted that the FSIA was urgently needed "in a modern world where foreign state enterprises are everyday participants in commercial activities." *See,* H.Rep. No. 94–1487, *supra,* at 7, U.S.Code Cong. & Admin.News, p. 6605.