**Chester D. STARRETT, Jr., Plaintiff,**

**v.**

**IBERIA AIRLINES OF SPAIN and Salvador Humbert, Defendants.**

**Civ. A. No. H–87–4044.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 8, 1989.

MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court are the objections of Plaintiff and Defendants to the Memorandum and Recommendation ("Recommendation") of the U.S. Magistrate on Defendants' Motion for Summary Judgment. The Court has considered the Recommendation (# 43), the objections of Plaintiff (# 44) and Defendants (## 45 and 46), and Plaintiff's response to Defendants' objections (# 47). For the reasons set forth below, the motion is granted in part and denied in part.

## I. APPLICABILITY OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND TITLE VII

### A. "Employer" Status of Iberia Airlines of Spain

■ The Foreign Sovereign Immunities Act of 1976 ("FSIA") is the exclusive basis for federal jurisdiction over corporations owned by foreign states. *Goar v. Compania Peruana de Vapores,* 688 F.2d 417 (5th Cir.1982). Under the FSIA, "[t]he district courts have original jurisdiction ... of any nonjury civil action against a foreign state ... with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a) (West Supp. 1989).[1] Defendant Iberia Airlines of Spain ("Iberia") argues that an instrumentality of a foreign state such as itself is neither an "employer" nor a "person" as defined by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630(a)-(b), or by Title VII, 42 U.S.C. § 2000e(a)-(b).

The ADEA and Title VII are both silent on whether instrumentalities of foreign states are employers within the meaning of the Acts. Both, however, apply to state and local governments, but exempt the federal government from the definition of "employer." *See* 29 U.S.C. § 630(b); 42 U.S.C. § 2000e(a)–(b). The current scheme

Bruce A. Coane, Coane and Associates, Houston, Tex., for plaintiff.

Edward A. Brill, New York City, for Salvador Humbert.

Frank G. Jones, Fulbright & Jaworski, Houston, Tex., for defendants.

---

1. Iberia is not immune from suit under § 1605 because it engages in "commercial activity" in the United States. 28 U.S.C. § 1605(a)(2) (West Supp.1989).

is the result of prior amendments, under which amendments the coverage of the two Acts was extended to include state and local governments. Defendants' position is that, since the ADEA and Title VII originally applied to *no* governments, and since Congress extended the coverage of the term "employer" to state and local governments, the ADEA and Title VII do not, by their very terms, apply to foreign governments or their instrumentalities.

The Magistrate recommended denial of Defendants' motion insofar as it pertains to this issue by relying heavily on *Gazder v. Air India,* 574 F.Supp. 134 (S.D.N.Y.1983). *Gazder* held that Air India, an instrumentality of India, was an "employer" for purposes of the ADEA. That Court based its holding on the " 'remedial and humanitarian' goal of eliminating age discrimination in employment," a "liberal" construction of injury-remedying legislation, and the absence of evidence of Congressional intent to exclude corporations owned by foreign governments. *Id.* at 136–37. *Gazder* also based its holding on the language of 28 U.S.C. § 1606, a provision of the FSIA providing that foreign states engaged in commercial activity are liable "in the same manner and to the same extent as a private person under like circumstances." 28 U.S.C. § 1606 (West Supp.1989). Defendants here, by pointing to legislative history, assert that § 1606, as part of the FSIA, addresses jurisdiction only and does not affect the substantive law of liability.[2]

This Court need not decide the difficult issue of the purpose of § 1606 in this regard. Defendants' contention that the ADEA and Title VII apply to state and local governments only is impugned by 29 U.S.C. § 633a and by 42 U.S.C. § 2000e–16, which provide for relief for discrimination by the federal government on account of age or of race, color, religion, sex, or national origin. Thus, although the federal government is not an "employer" within the portions of the ADEA and Title VII addressing employers, both statutes expressly proscribe discrimination by the federal government and provide for its redress. The coverage of the ADEA and Title VII of state and local governments as well as the federal government—albeit in different ways—is thus not as limited as Defendants assert. Because of this broad governmental coverage, this Court holds that, in the absence of express intent on the part of Congress to exclude corporations owned by foreign governments which are engaged in commercial activity in the United States, such corporations are employers and persons within the meaning of 29 U.S.C. § 630(a)–(b) (ADEA) and 42 U.S.C. § 2000e(a)–(b) (Title VII). *See also State Bank of India v. N.L.R.B.,* 808 F.2d 526, 530–34 (7th Cir.1986) (instrumentality of foreign government an "employer" within National Labor Relations Act, 29 U.S.C. § 152(2)).

Aside from the " 'remedial and humanitarian' " goal of the ADEA expressed by *Gazder,* 574 F.Supp. at 136, this Court's conclusion that Iberia is an "employer" is buttressed by another public policy concern. Since Iberia conducts business in the United States, it has availed itself of the benefits and protections of American law. It is certainly reasonable for Iberia to abide by those laws.

### B. Treaty of Friendship and General Relations

As quoted above, the FSIA immunizes foreign governments from suit when international agreements so provide. 28 U.S.C. § 1330(a) (West Supp.1989). In their motion for summary judgment, Defendants assert that they are immune from the ADEA and Title VII because of the Treaty of Friendship and General Relations, July 3, 1902, United States–Spain ("Treaty"). The Magistrate recommended denial of the motion on this ground, and Defendants have objected to the recommendation.

Defendants' position is based upon their interpretation of the language found in the Treaty:

[t]he citizens and subjects of the two high contracting parties ... shall have

---

**2.** Memorandum in support of objections at 19.

... the same rights as ... the citizens or subjects of the most favorite Nation.

....

They can freely exercise their industry or their business ... without being subjected ... to any ... conditions whatsoever, other or more onerous than those which are imposed or may be imposed upon ... the citizens or subjects of the most favorite Nation.

Treaty Article II. Generally, most favored nation clauses guarantee foreign nationals treatment as favorable as that enjoyed by citizens of any foreign nation. *Spiess v. C. Itoh & Co. (America), Inc.*, 643 F.2d 353, 360 (5th Cir.1981), *cert. denied*, 469 U.S. 829, 105 S.Ct. 115, 83 L.Ed.2d 58 (1984). Defendants' position is that certain post-World War II treaties entered into by the United States "grant greater commercial rights in the United States than those expressly afforded to Spain." [3]

The post-World War II treaties to which Defendants refer contain several innovations over prior Friendship, Commerce and Navigation ("FCN") treaties.[4] Of importance here, these treaties grant companies of either country the right to hire "experts, executive personnel, attorneys, agents and other specialists *of their choice.*" *See, e.g.*, Treaty of Friendship, Commerce and Navigation, April 2, 1953, United States–Japan, 4 U.S.T. 2063, T.I.A.S. No. 2863 (emphasis added). Therefore, since Spain is entitled to "most favorite Nation" treatment, Defendants argue that Spanish companies are likewise entitled to hire personnel "of their choice." The significance of the "of their choice" clause for present purposes is this: in *Spiess*, the Fifth Circuit held that the "of their choice" language contained in the American–Japanese FCN treaty quoted above exempts Japanese companies in the United States from American employment discrimination laws "to the extent of per-

mitting discrimination in favor of Japanese citizens in employment...." 643 F.2d at 359.[5] If the "of their choice" clause applies to the Treaty, therefore, Spanish companies are immunized from American employment discrimination laws to some extent.

The Court need not resolve the difficult question of whether the "of their choice" clause is available to Iberia by virtue of the "most favorite Nation" clause in the Treaty. Even assuming *arguendo* that the "of their choice" clause applies to the Treaty, Iberia would not be shielded from American discrimination laws in this case. The Magistrate found that Chester Starrett had been replaced with a Venezuelan national.[6] In *Spiess*, the Fifth Circuit held that the immunity granted Japanese companies extends "only to the extent of permitting discrimination in favor of *Japanese* citizens in employment...." 643 F.2d at 359 (emphasis added). Thus, a corporation owned by a foreign government operating under an "of their choice" clause is limited to discriminating in favor of nationals of that particular country.

### C. Conclusion

For the reasons set forth above, the Court adopts the Magistrate's conclusion that the ADEA and Title VII apply to Iberia.

### II. PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981

Plaintiff has also asserted a claim under 42 U.S.C. § 1981.[7] Claims of race-motivated discharge are not actionable under § 1981. *Greggs v. Hillman Dist. Co.*, 719 F.Supp. 552 (S.D.Tex.1989). The Court *sua sponte* dismisses this claim.

---

3. Memorandum in support of objections at 6.

4. For a discussion, see *Spiess*, 643 F.2d at 359–60.

5. The immunity extends only to foreign companies operating in the United States, and not to subsidiaries of foreign corporations incorporated in this country. *Sumitomo Shoji America,*

*Inc. v. Avagliano*, 457 U.S. 176, 102 S.Ct. 2374, 2381, 72 L.Ed.2d 765 (1982).

6. Defendants do not attack this finding. Memorandum in support of objections at 11.

7. Complaint ¶ 6.

## III. PLAINTIFF'S STATE LAW CLAIMS

Plaintiff has also asserted state law claims for intentional or negligent infliction of emotional distress.[8] The Magistrate recommended that this Court grant the motion as to intentional infliction and deny the motion as to negligent infliction.

■ At the outset, the Court addresses Defendants' contention that the Texas employment at will doctrine bars Plaintiff's state law cause of action. Defendants assert that, under the doctrine, an employee may be discharged for any reason, and that, under Texas law, a discharged employee may not conceal the true nature of his suit by artfully pleading emotional distress. Although Defendants' assertion that a discharged employee who sues for wrongful discharge may not also assert infliction of emotional distress is correct, see *Mayon v. Southern Pac. Transp. Co.*, 805 F.2d 1250, 1253 n. 3 (5th Cir.1986), an employee may assert a pendent state claim for infliction of emotional distress when suing under federal employment discrimination laws. *See, e.g., Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir.1989).

### A. Intentional Infliction of Emotional Distress

■ Under Texas law, intentional infliction of emotional distress requires proof of four elements:

1) the defendant acted intentionally or recklessly;
2) the conduct was extreme and outrageous;
3) the actions of the defendant caused the plaintiff emotional distress; and
4) the emotional distress suffered by the plaintiff was severe.

*Id.* Conduct is outrageous when it surpasses " 'all possible bounds of decency,' such that it is 'utterly intolerable in a civilized community.' " *Id.* (citing Restatement (Second) of Torts § 46, comment d). The Magistrate found that "the facts as alleged and shown by plaintiff do not amount to outrageous conduct."[9] Plaintiff's Objections allege two acts of Defendant Humbert in support of this claim: 1) Humbert's calls to travel agencies to see if Plaintiff actually made the calls listed on the weekly itinerary, which allegedly caused Plaintiff "tremendous embarrassment and loss of reputation among those with whom he regularly conducted business"; and 2) an incident in which Defendant Humbert "became angry and raged at Plaintiff in front of another employee."[10]

This Court adopts the Magistrate's conclusion that the summary judgment evidence is insufficient to support a claim for intentional infliction of emotional distress. This Court is of the opinion that a reasonable trier of fact could not conclude, based upon the summary judgment evidence, that the alleged conduct of Defendant Humbert discussed above "surpasses all possible bounds of decency," and is "utterly intolerable in a civilized community." Moreover, Plaintiff produced no summary judgment evidence tending to show that Humbert acted with intent to cause emotional distress or that Plaintiff's alleged emotional distress was severe.

### B. Negligent Infliction of Emotional Distress

■ This Court declines to adopt the Magistrate's conclusion that Defendants' motion should be denied as to Plaintiff's claim for negligent infliction of emotional distress. As Defendants have correctly pointed out, "plaintiff has alleged intentional—not negligent acts."[11] The tort of negligent infliction of emotional distress is applicable when a person suffers emotional distress after witnessing an event which was negligently caused. This tort requires that the Defendant could have foreseen the injury to the plaintiff (i.e., owed the plaintiff a duty of care), taking into account the factors set forth in the landmark case of *Dillon v. Legg*, 68 Cal.2d 728, 740, 441 P.2d

8. Complaint ¶¶ 11–12.

9. Recommendation at 17.

10. Plaintiff's Objections at 2.

11. Memorandum in support of objections at 25.

912, 920, 69 Cal.Rptr. 72, 80 (1968). *Freeman v. City of Pasadena,* 744 S.W.2d 923, 924 (Tex.1988). The tort is not applicable to the case at bar. There is no summary judgment evidence that the conduct of either Defendant here was negligent. The Court grants Defendants' motion as to this claim.

In accordance with the foregoing, it is therefore

ORDERED that Defendants' motion for summary judgment is hereby GRANTED as to Plaintiff's claim for intentional or negligent infliction of emotional distress. It is further

ORDERED that Defendants' motion for summary judgment is hereby in all other things DENIED. It is further

ORDERED that Plaintiff's claim under 42 U.S.C. § 1981 is hereby DISMISSED.