**TEXAS EMPLOYMENT COMMISSION, Appellant,**

v.

**HUGHES DRILLING FLUIDS, Appellee.**

No. 12–86–00261–CV.

Court of Appeals of Texas, Tyler.

Jan. 15, 1988.

Rehearing Denied Feb. 25, 1988.

---

1. No evidence of a written confession was contained in the record.

Christine Monzingo, Asst. Atty. Gen., Austin, for appellant.

Fraser McAlpine, Debra Tellez, Houston, for appellee.

COLLEY, Justice.

Defendant and sole appellant Texas Employment Commission (hereinafter Commission) appeals from a summary judgment granted plaintiff/appellee Hughes Drilling Fluids (hereinafter Hughes) denying unemployment compensation benefits to John H. Bodessa, a former employee of Hughes.

Bodessa was discharged by Hughes on October 15, 1985, for his refusal to submit a urine sample for drug-screening purposes as required by a company policy. Bodessa's claim for unemployment compensation benefits was initially denied on November 5, 1985, by the Commission's local office in Palestine. Bodessa appealed that determination to the Commission's Appeal Tribunal. The Tribunal reversed the local office's decision that Bodessa was disqualified from receiving unemployment bene-

fits. On February 12, 1986, Texas Employment Commission affirmed the decision of the Appeal Tribunal. Hughes filed suit in the County Court at Law of Anderson County on March 4, 1986, seeking judicial review by trial de novo as authorized by former article 5221b–4(h), (i).[1]

Hughes filed a motion for summary judgment which the court granted. The summary judgment reverses the Commission's decision and decrees that Bodessa is disqualified to receive unemployment benefits.

The principal question in this appeal is whether Bodessa's refusal to submit a urine sample for drug-screening purposes as required by written company policy amounts to "misconduct" under the Act disqualifying Bodessa for unemployment compensation benefits following his discharge from employment by Hughes.

The Commission presents three points of error contending the trial court erred in granting the judgment because (1) the policy which Bodessa is charged with violating is unreasonable; (2) the Commission's decision that Bodessa was entitled to benefits is supported by substantial evidence; and (3) Bodessa did not violate the policy or rule. We affirm the judgment.

The summary judgment evidence reveals that Bodessa was employed by Hughes on March 17, 1985, as a warehouse worker and truck driver. No agreement as to the specific terms or conditions of his employment exists. He was an "at-will" employee.

On May 21, 1985, Hughes adopted a written "Contraband Interdiction" policy prohibiting the use or possession by its employees of controlled substances, alcoholic beverages and firearms on any of its facilities.[2] The policy reads in pertinent part as follows, to wit:

OBJECTIVE

To (1) assist in maintaining a safe working environment for employees (defined as employees of Hughes Drilling Fluids and its affiliated or subsidiary companies, contractors, invitees and sub-contractors and their employees); (2) protect Hughes Drilling Fluids' property; and, (3) cooperate with contractors and subcontractors in their efforts to contribute to safe and efficient operations. For the purposes of this policy, the term "Company Premises" for Hughes Drilling Fluids, its affiliates or subsidiaries as used herein includes all property, facilities, land, platforms, buildings, structures, fixtures, installations, boats, aircraft, automobiles, trucks and all other vehicles, whether owned, leased or used. This policy also includes any other work location or mode of transportation to and from those locations while in the course and scope of company employment.

POLICY

The use, possession, concealment, transportation, promotion or sale of the following items or substances is strictly prohibited from all of the above mentioned company premises by Hughes Drilling Fluids employees, employees of other contractors, companies and other invitees.

> 1) ILLEGAL DRUGS, CONTROLLED SUBSTANCES, LOOK–ALIKES, DESIGNER AND SYNTHETIC DRUGS.
> ....

Searches (including Urine Drug Screening or Blood and Plasma sampling) and inspections by authorized Search and Inspection Specialists and Hughes Drilling Fluids managers and supervisors will be conducted from time to time without prior announcement. Searches will be performed with concern for each employee's or person's privacy.

DISCIPLINARY ACTION

No employee or person search, urine drug screen or inspection will be conduct-

---

1. Act of April 28, 1955, ch. 116, § 4, 1955 Tex. Gen.Laws 400, 402–403, amended Act of June 18, 1987, ch. 833, § 1, 1987 Tex.Sess.Law Serv. 5749, 5752–5753 (Vernon), hereafter referred to as former article 5221b–4.

2. Bodessa was employed to work at Hughes' facility located in Tucker, Texas.

ed without the written consent of the person to be searched; however, any Hughes Drilling Fluids employee who refuses to submit to a search, urine drug screen, blood and plasma sampling, inspection, or is found in possession, use, or transportation of any illegal substances, contraband, Hughes Drilling Fluids' property, or any of the above mentioned drugs and unauthorized items, *will be* subject to disciplinary action up to and including discharge from employment. Any person having business with Hughes Drilling Fluids who refuses to submit to a search, urine drug screen, blood and plasma sampling, or is found to be in possession of any illegal substances, contraband, Hughes Drilling Fluids property, or any of the above mentioned drugs and unauthorized items, *will not* be allowed on the premises, or, if present, will be removed and not allowed to return to any of Hughes Drilling Fluid's properties or facilities described above.... (Emphasis in original.)

On June 3, 1985, U.R. Weems, President of Hughes, mailed to each employee a letter along with a copy of the policy. In that letter, Weems admonished each employee, "[p]lease read this policy carefully and direct any questions that you may have to your supervisor or R.L. DeArman, Manager–Employee Relations."

The summary judgment evidence establishes that Bodessa attended an employee's meeting conducted by DeArman in Tyler on July 9, 1985. DeArman, in his affidavit supporting Hughes' motion for summary judgment, testified that he personally explained the policy at that meeting and the consequences of employee "noncompliance." Shortly before the meeting, Bodessa was requested to sign a "form" consenting to the policy provisions. He refused to do so.

On October 15, 1985, "search specialists" and Hughes' safety coordinator, Oliver Matherne, arrived at Hughes' facility located in Tucker, Texas, where Bodessa was employed, and requested Bodessa to sign a written consent form, and to give a urine sample for drug screening. Bodessa refused,.and he was promptly suspended and ordered to leave Hughes' premises. The next day Bodessa was discharged by Hughes in accordance with the disciplinary provisions of the policy.

We first address the Commission's third point[3] of error and its arguments in support thereof.

The summary judgment evidence shows that Bodessa refused to sign the initial "form" because the urine collection and screening processes were to be performed by non-medical personnel, but according to his testimony, he would have consented had the policy provided that "such tests were [to be] done under controlled conditions in the office of a medical doctor." In other words, Bodessa, as the Commission argues, offered his *qualified* consent to the collection and screening process, and thus was not guilty of a violation of the policy. Under its first point of error,[4] and somewhat extraneous thereto, the Commission argues that the policy "makes consent to [urine collection for drug screening] voluntary." So, "[i]n exercising his choice under the policy to not consent ... Bodessa could not have committed misconduct. He did not violate the policy...." The Commission also contends that the policy was not a part of Bodessa's "original hiring agreement," and because Hughes continued to employ him from July through October, 1985, with knowledge that Bodessa had not signed the initial (June 1985) consent form, Hughes waived its right to enforce the policy against Bodessa. We reject these arguments.

As Hughes argues, Bodessa was an "at-will" employee of Hughes. Consequently, his conduct in continuing to work with full notice of the provisions of the

---

3. Designated as subpoint I.C. in the Commission's appellate brief.

4. Subpoint of error I.A. in the appellate brief.

policy amounted to his acceptance of the terms and provisions of the policy as conditions of his continued employment.[5] *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex.1986).

■ The Commission asserts that because the policy provides that no urine sample would be collected without an employee's written consent, and since Bodessa chose not to sign the written consent, he did not violate the policy by refusing to submit a urine specimen for drug screening. We find such argument unpersuasive. We construe the applicable provisions of the policy to require Bodessa to give *both* his consent and the urine specimen. The undisputed evidence shows that he did neither. His conduct amounted to a violation of the policy requirement. The third point of error is overruled.

■ We turn to consider the Commission's first point[6] of error by which it argues that Hughes' policy is unreasonable. Under the point, the Commission contends that the policy impermissibly required Bodessa to give up his Fourth Amendment[7] protection against unreasonable searches and seizures and invasion of his right to privacy, as well as his common-law right to privacy. Therefore, the Commission asserts that Bodessa's violation of the policy cannot form the basis for denying his right to receive unemployment compensation benefits under the Act. Hughes responds by stating that the policy is reasonable, that no Fourth Amendment rights of Bodessa are implicated, and that the policy does not impinge on Bodessa's right to privacy under Texas law. We agree.

Article 5221b–3[8] reads, in part, "[a]n individual shall be disqualified for benefits: ... (b) [i]f the Commission finds he has been discharged for misconduct connected with his last work." "Misconduct" as used in article 5221b–3 is defined by article 5221b–17(q) of the Act as follows:

'Misconduct' means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, intentional wrongdoing or malfeasance, intentional violation of a law, or *violation of a policy or rule adopted to ensure orderly work and the safety of employees*, but does not include an act of misconduct that is in response to an unconscionable act of an employer or superior. (Emphasis ours.)

The Commission contends that the decisions in *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), by way of analogy prohibit the disqualification of Bodessa for benefits under the Act. Hughes argues that these decisions are inapposite. We agree with Hughes. In *Thomas* following *Sherbert*, the Court concluded that Thomas,[9] the petitioner, was forced by the Indiana Unemployment Compensation Act to choose between the free exercise of his religious beliefs and drawing unemployment compensation benefits and that the statute, as applied to him, placed an impermissible indirect burden on his First Amendment[10] right to free exercise of his religion not justified by a showing *"that [the legislation] is the least re-*

---

5. The initial "form" which Bodessa was requested to sign required him to acknowledge that he had read and understood the policy on urine and drug screening, and "understood that [his] compliance with said policy is a condition of ... continued employment."

6. Designated as subpoint I.A. in appellant's brief.

7. The Commission at oral argument abandoned its argument under the Fifth Amendment.

8. Tex.Rev.Civ.Stat.Ann. art. 5221b–3 (Vernon 1987). Unless otherwise indicated, all references to articles are to the Texas Unemployment Compensation Act, sometimes referred to as the Act.

9. A Jehovah's Witness.

10. The pertinent portion of the Amendment reads, "Congress shall make no laws respecting the establishment of religion, or prohibiting the free exercise thereof...."

*strictive means of achieving some compelling state interest."* (Emphasis ours.) *Thomas,* 450 U.S. at 718, 101 S.Ct. at 1432.

Chief Justice Burger, writing for the majority, noted in *Thomas,* 450 U.S. at 717, 101 S.Ct. at 1431–32, that a state may justify an inroad on religious liberty by showing that "it is the least restricted means of achieving some compelling state interest" and, quoting from *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972), observes, "[t]he essence of all that has been said and written on the subject is that only those interests of the highest order ... can overbalance legitimate claims to the free exercise of religion."

It is logically impossible to deny the analogy of the rationale of *Thomas,* point by point, to the case before us involving the Fourth Amendment. In that case, the employee was held by the Indiana Supreme Court to be statutorily disqualified to receive benefits because he voluntarily left his employment without good cause. The United States Supreme Court, relying on administrative and lower court findings that Thomas voluntarily terminated his employment "because of his religious convictions," *Thomas,* 450 U.S. at 720, 101 S.Ct. at 1433, reversed the judgment of the Indiana Supreme Court, holding that as applied to Thomas, the *statute* imposed an impermissible burden on Thomas' free exercise of his religious beliefs in contravention of the free exercise clause of the First Amendment.

In our case, the contention is that Bodessa's Fourth Amendment rights are offended by his statutory disqualification from benefits because of his discharge for violation of a private employer's policy which required him to surrender a part of his Fourth Amendment protection.

Nevertheless, in our view, neither *Thomas* nor *Sherbert* is applicable here.

Historically, the Supreme Court has consistently limited the application of the Fourth Amendment to governmental intrusion. For example, it has long been held that things, contraband or not, seized by a private citizen from another as the fruits of an intrusion or search, which if done by government would violate the very essence of the Fourth Amendment, are nevertheless admissible into evidence to convict the owner or former possessor thereof of a crime. *E.g., Burdeau v. McDowell,* 256 U.S. 465, 476, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed. 2d 85 (1984). *A fortiori,* the lesser sanction of forfeiture of unemployment compensation benefits is likewise permissible though accomplished by state action. Furthermore, in this case, the evidence conclusively establishes that Bodessa consented to the urine drug-screening process by his conduct in continuing to work after receiving actual notice that the provisions of the policy constituted conditions of his continued employment with Hughes. Moreover, we are convinced that the same state interest argued in *Thomas,* while held inadequate there, is wholly sufficient here where the policy to be enforced is dedicated to eliminating drug abusers[11] from the private sector work place.

The Commission argues that the policy violates Bodessa's right of privacy under the common-law rule existing in Texas. We disagree.

■ Assuming without deciding that the judicially declared right of privacy enunciated in *Billings v. Atkinson,* 489 S.W.2d 858, 859–860 (Tex.1973), and its progeny,[12] is not modified by articles 5221b–3 and 5221b–17(q),[13] we conclude that the policy does not violate Bodessa's rights to privacy as delineated in the reported cases. This is so because Bodessa, under the circumstanc-

11. We should not be understood as characterizing Bodessa as a drug abuser. The record in no way reflects that he ever abused drugs of any kind or character.

12. *E.g., Moore v. Charles B. Pierce Film Enterprises,* 589 S.W.2d 489, 490 (Tex.Civ.App.–Texarkana 1979, writ ref'd n.r.e.).

13. Or by other provisions of the Act.

es here, consented to the urine drug screening, thereby giving up his "right to be left alone" while present in the work place.

■ We agree with the Commission that violation of unreasonable rules promulgated by an employer cannot constitute misconduct under the Act disqualifying an employee from benefits. Indeed, we are certain that the Legislature harbored no intention to disqualify employees who violate a company policy or rule which is wholly arbitrary or capricious. Given the Legislature's declaration of the purposes of the Act when initially enacted in 1936 [14] and the legislatively declared construction aids set forth in Tex. Gov't Code Ann. §§ 311.021, 311.023 (Vernon Supp.1987), the courts are called upon to construe liberally each provision of the Act to the end that the overall purposes of the Act are *justly* served. *Cf. Ryan,* 481 S.W.2d at 177.[15] Having so concluded, our task is to determine whether Hughes' policy is reasonable as applied to Bodessa in this case.

■ The policy prohibits the possession, use or sale of illegal drugs, alcoholic beverages, and firearms by any employee on Hughes' premises. It provides a random urine collection process for drug-screening purposes. It provides that any employee who refuses to submit a urine sample for drug screening is "subject to disciplinary actions up to and including discharge from employment." The policy provides also that the urine collection and screening process "will be performed with concern for each employee's ... privacy." In part, the stated objective of the policy is "to assist in maintaining a safe working environment

for employees." Our review of the policy convinces us that it is both reasonable, and is reasonably calculated to "ensure the safety of [Hughes'] employees." According to the evidence, while urine drug screening is not effective to demonstrate psychomotor impairment at the time of the specimen collection, it is effective to identify persons who have, at some time in the recent past, ingested or otherwise used drugs, legal or illegal. When positive results from the drug-screening process are reflected, the policy itself provides that the specimen may be subjected to other confirming tests. The aim of the policy, as here applied, is to discipline or remove drug abusers [16] from Hughes' work force. Certainly it is a policy or rule that works for the protection and safety of Hughes' employees. We reject the Commission's argument that the policy is unreasonable. The first point of error is overruled.

The Commission by its second point of error [17] claims its decision is reasonably supported by substantial evidence. Hence, the summary judgment should be reversed.[18]

A majority of the Texas Employment Commission affirmed the Appeal Tribunal's decision that Bodessa was not disqualified to receive benefits under the Act "for refusing to consent to certain provisions of [Hughes'] contraband intradiction [policy]." The Commission's decision recited, in part, "that the case was properly decided by the Appeal Tribunal."

Judicial review of a decision [19] of the Texas Employment Commission is provided by former article 5221b–4(i). Review is initiated by suit filed in a trial court of competent jurisdiction by an aggrieved par-

**14.** *See Texas Employment Commission v. Ryan,* 481 S.W.2d 172, 177 (Tex.Civ.App.1972, no writ).

**15.** We do not wish to be understood as adopting in toto the reasonableness test enunciated by our sister court in *City of Dallas v. Texas Employment Commission,* 626 S.W.2d 549, 551 (Tex.App.—Texarkana 1981, no writ).

**16.** See note 11 page 9.

**17.** Designated as subpoint I.B. in the appellant brief.

**18.** The Commission did not file a Motion for Summary Judgment on the entire case and in the event of reversal, we are required to remand the case for further proceedings. *See Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–401 (1958).

**19.** On the date pertinent here.

ty. The resulting trial is de novo, but the substantial evidence rule must be applied. The Commission's decision must be unheld by the trial court if the decision is *reasonably supported by the evidence adduced at the trial de novo*. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex.1986). Whether the Commission's decision is reasonably supported by substantial evidence is a law, not a fact question. *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752, 756 (Tex.1966).

It is axiomatic that an administrative agency may not exercise its powers "arbitrarily or capriciously, and the reasonableness of its orders is, and must be, subject to judicial review." *Fire Department v. City of Fort Worth*, 141 Tex. 505, 217 S.W.2d 664, 666 (1949) (citations omitted). The question here is not whether the evidence is unsubstantial, but rather whether the legal questions presented by the undisputed material facts were correctly decided by the Commission. It is our opinion that the summary judgment evidence establishes as a matter of law that Bodessa is disqualified under articles 5221b–3 and 5221b–17(q) for unemployment compensation benefits because of misconduct connected with his employment with Hughes, his last employer.

The judgment is affirmed.