Willie **FARRINGTON**, Appellant,

v.

**SYSCO FOOD SERVICES, INC.**, Appellee.

No. 01–93–00018–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 14, 1993.

Rehearing Denied Oct. 29, 1993.

Beverly B. Lord, Houston, for appellant.

Nancy L. Patterson, Teri L. Danish, Fulbright & Jaworski, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and HEDGES, JJ.

## OPINION ON MOTION FOR REHEARING

OLIVER–PARROTT, Chief Justice.

In response to appellant's motion for rehearing, we withdraw our previous opinion dated August 26, 1993, and substitute this opinion in its place. We overrule appellant's motion for rehearing.

Appellant, Willie Farrington, appeals the granting of summary judgment in favor of appellee, Sysco Food Services, Inc. (Sysco), on his claims of race discrimination in violation of the Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k (Vernon 1987 and Vernon Supp.1993) (TCHRA), wrongful termination, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. We affirm.

Sysco is a wholesale distributor of food and restaurant supplies. Farrington, a black male, was employed as a supervisor by Sysco in February 1984. On August 7, 1988, Farrington's business card holder was found by Mark Lacher (another employee), on the floor of a company-owned vehicle Farrington had used earlier that week. The business card holder contained a substance that looked like cocaine.

After the substance was discovered, Farrington agreed to take drug and polygraph tests. During the polygraph exam, Farrington provided the examiner with a signed admission saying he "could have been under the influence of drugs while at Sysco on a prior occasion." On August 10, 1988, Farrington was terminated. Farrington asserts that three weeks before the incident he had made a complaint of racial discrimination and that his termination came as a result of his complaint.

### Summary judgment

■ A defendant need only negate one element of each cause of action raised by the plaintiff to obtain a summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Southwest Indus. Import &* *Export, Inc. v. Borneo Sumatra Trading Co., Inc.*, 666 S.W.2d 625, 627 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); TEX. R.CIV.P. 166a. When the order granting summary judgment does not specify the particular grounds the trial court sustained, on appeal, the summary judgment opponent must defeat each summary judgment ground urged by the movant. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Otherwise, the appellate court must uphold the summary judgment on any ground that finds support. *Carr*, 776 S.W.2d at 569.

■ The summary judgment movant must demonstrate: (1) that no genuine issue of material fact exists as to an essential element of the plaintiff's case; and (2) the movant is entitled to summary judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Donovan v. Jones*, 830 S.W.2d 825, 825–26 (Tex. App.—Houston [1st Dist.] 1992, no writ). Once the movant establishes that no genuine issue of material fact exists regarding an essential element of the plaintiff's claim, the nonmovant must present competent summary judgment evidence raising a fact issue on that element. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 285 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

■ In the appeal of a summary judgment case, the appellate court is entitled to consider evidence that favors the movant's position when that evidence is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). A trial court properly may grant summary judgment based on the uncontroverted evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986); TEX.R.CIV.P. 166a(c).

### I. Race Discrimination

In his first point of error, Farrington asserts race discrimination under TCHRA.

Farrington specifically complains of the following: (1) he was harassed on the basis of his race in connection with his termination; and (2) his compensation and opportunities for promotion were limited due to race.

■ The TCHRA has as its express purpose, "the execution of the policies embodied in Title VII of the federal Civil Rights Act of 1964, as amended (42 U.S.C. Section 2000e et seq.)." *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991). The Texas Supreme Court has observed that one of the purposes behind this act is the "correlation of state law with federal law in the area of discrimination in employment." *Id.* Accordingly, when reviewing a case, we may look to federal case law interpreting Title VII when determining the burdens of proof under the TCHRA. *Id.; City of Austin v. Gifford*, 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ).

■ The elements that a plaintiff must show in order to establish a *prima facie* case of employment discrimination are: (1) he was a member of a protected class: (2) he suffered an adverse employment action: (3) and non-protected class employees were not treated similarly. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for any allegedly unequal treatment. *Id.* After this is established by the employer, the burden then shifts back to the plaintiff to prove that the employer's articulated reasons are a pretext for unlawful discrimination. *McDonnell–Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *see, e.g., Lakeway Land Co. v. Kiser*, 796 S.W.2d 820, 822–23 (Tex.App.—Austin 1990, writ denied) (utilizing *McDonnell–Douglas* framework of proof in article 5221k case). Even though the burden of production shifts, the burden of persuasion remains continuously with the plaintiff. *McDonnell–Douglas*, 411 U.S. at 803; 93 S.Ct. at 1825. Also, subjective beliefs of discrimination *alone* are insufficient to establish a *prima facie* case. *Montgomery v. Trinity I.S.D.*, 809 F.2d 1058, 1061

(5th Cir.1987); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir.1985).

**A. Promotion and compensation claims**

■ Farrington alleges that he was denied promotions and compensation during his employment due to his race. He asserts that Sysco has a two-tier management structure, set up with managers and supervisors. The manager's position is the more prestigious and higher compensated position. He complains that there were two manager's promotions he applied for and did not receive. These were the positions of day warehouse manager and day operations manager. The two employees who received the promotions, Joe Clark and Jim Hayes, were both white. Also, Farrington complains that two other managers, Jim Scarborough and Don Langfeld, received a higher pay salary than he did.

If we assume, arguendo, that Farrington established a prima facie case that failure to promote him to either manager position was racially motivated, the burden would then shift to Sysco to prove legitimate, non-discriminatory reasons for any allegedly unequal treatment. Here, Sysco attached portions of Farrington's deposition to its motion for summary judgment where he admits that all four of the managers had more seniority with Sysco than he did.

The burden of production would then shift back to Farrington to show that the reason proffered by Sysco was a pretext to race discrimination. Farrington brings forward no evidence that the use of a seniority system for promotion was a pretext for discriminating against him. Thus, Farrington has failed to establish a claim of race discrimination in violation of TCHRA.

**B. Harassment**

■ Farrington further asserts that because he submitted to drug and polygraph tests following the discovery of the substance in his business card holder, Sysco set out to harass and terminate him.

Attached to Sysco's motion for summary judgment was a copy of its policy and proce-

dures form, which detailed that a violation by the "use and or possession of drugs during working hours and/or on Company premises is strictly forbidden," and was grounds to subject the employee to immediate termination. Farrington also testified that he knew and understood the contents of the policy and procedure form when he signed it.

In Farrington's response to the motion for summary judgment, he directs this Court to excerpts from his deposition to support the harassment contention.[1] We find that the testimony fails to raise a fact issue of Farrington's allegations that Sysco set out to harass and terminate him. Moreover, the record is devoid of any showing that another employee of Sysco violated their drug policy and was treated different than Farrington. Thus, Sysco's assertions that Farrington cannot establish the validity of his subjective belief that his treatment constituted racial harassment is supported by the record. *Montgomery,* 809 F.2d at 1061; *Hornsby,* 777 F.2d at 246–47.

We overrule Farrington's first point of error.

## II. Wrongful termination

In his second point of error, Farrington contends that the trial court erred in granting summary judgment on his claim of wrongful termination. Specifically, Farrington claims: (1) Sysco made an oral promise with him, thus negating his at will relationship; and (2) that his termination violated public policy.

1. The following are the portion of the depositions that Farrington directs the court to consider:
[Attorney]: What was Mr. Cavanaugh's position?
[Farrington]: Vice president.
[Attorney]: What were their responses when you spoke with them about [pay increase]?
[Farrington]: Just wait till next year when the annual reviews come out, you're going to get what you got coming to you.
[Attorney]: And did you feel you got what you got coming to you when the annual reviews came out?
[Farrington]: No, I didn't.
. . . .
[Farrington]: I think my termination was planned and more or less suggested.

## A. Employment term

■ Texas adheres to the doctrine of employment at will, under which employment for an indefinite period of time may be terminated by either party at will, with or without cause. *Schroeder,* 813 S.W.2d at 489; *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). Valid contractual limitations on the right to terminate may, of course, be imposed by agreement of the parties. *United Transp. Union v. Brown,* 694 S.W.2d 630, 632 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.).

To establish a cause of action for wrongful discharge, an employee must prove that he and his employer entered into a contract that specifically provided that the employer did not have the right to terminate the employment at will. *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 539 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Farrington does not, however, maintain there was an agreement that he would not be terminated if he took the tests; instead that he claims that he was advised by the polygraph examiner that she could help him keep his job if he would sign an admission that he might have been on drugs at work. Moreover, Farrington submits that the examiner said that Sysco would only require him to be drug tested periodically and only upon testing positive would he be terminated.

■ Even if we assume a polygraph examiner could bind the company, this alleged

[Attorney] Who do you think planned it?
[Farrington] I don't know. But I do know that I was told that I would be terminated, that they would find a way to terminate me.
[Attorney]: That was the statement you referred to previously that David Rayle made?
[Farrington]: Yes.
[Attorney]: Did he tell you why they would find a reason to terminate you?
[Farrington]: He said, you don't rock the boat like that. Those were his exact words.
[Attorney]: He was referring to your comments about compensation?
[Farrington]: I don't know. Those are just his exact words, you don't rock the boat. If you don't have a job or if you already have a job, you need to be looking for one, because they will find a way to terminate you.

oral promise made by the polygraph examiner was never reduced to writing. The statute of frauds provides that contracts not to be completed within one year are not enforceable unless in writing. TEX.BUS. & COM. CODE ANN. § 26.01(b)(6) (Vernon 1987); *Schroeder*, 813 S.W.2d at 489. It is well-settled law in Texas that when an employment contract is oral, stating no definite duration, it is terminable at-will by either party. *Schroeder*, 813 S.W.2d at 489; *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 723–24 (Tex.1990). Since the alleged oral promise that Farrington would not be terminated unless he failed a drug test was not in writing, it is not enforceable.

### B. Violation of Public Policy

The Texas Supreme Court has created a narrow exception to the employment at-will doctrine. In *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985), the court recognized the exception for an employee discharged "for refusal by an employee to perform an illegal act." To be covered by the *Sabine Pilot* exception, a plaintiff must plead and prove that the sole reason for his discharge was his refusal to perform an illegal act requested by the employer. *Id.* at 736. The summary judgment record does not reflect that Sysco had discharged Farrington for failing to do an illegal act requested by Sysco.

Farrington asserts that Sysco's request that he take a polygraph test violated the Employee Polygraph Protection Act (EPPA) of 1988.[2] The EPPA has no bearing on this case because it did not become effective until six months after the date of its June 27, 1988, enactment. All of the events in question took place on August 9, 1988, well before the effective date of the EPPA. Therefore, Sysco's requirement of Farrington to submit to a polygraph test was proper.

We overrule Farrington's second point of error.

### III. Invasion of privacy

In his third point of error, Farrington contends that the trial court erred in granting summary judgment against his claim of invasion of privacy. Specifically, he complains that the drug and polygraph tests constituted an invasion of privacy.

Texas law recognizes the common-law right to privacy. *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex.1973). There are three elements to consider in regard to invasion of privacy: (1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) which would be highly offensive to a reasonable person. *Gill v. Snow*, 644 S.W.2d 222, 223–24 (Tex.App.— Fort Worth 1982, no writ); RESTATEMENT (SECOND) OF TORTS, § 652B (1977). Additionally, courts have required that the intrusion be unreasonable, unjustified, or unwarranted. *Billings*, 489 S.W.2d at 860; *K–Mart v. Trotti*, 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Texas courts have decided that drug testing of private sector employees does not amount to a tortious invasion of privacy, when there is consent. *Jennings v. Minco Technology Labs, Inc.*, 765 S.W.2d 497, 500 (Tex.App.—Austin 1989, writ denied); *Texas Employment Comm'n v. Hughes Drilling Fluids, Inc.*, 746 S.W.2d 796, 801–802 (Tex. App.—Tyler 1988, writ denied).

In *Jennings*, the court reasoned that the employer's urinalysis program would not violate plaintiff's privacy because her urine would be tested only if she consented. *Jennings*, 765 S.W.2d at 502. Jennings argued that her consent would be ineffective because if she did not consent, she would lose her job, which she could not afford to do. The court rejected her argument, however, because "[t]here cannot be one law for the rich and another law for the poor." *Id.* The court concluded that "consent amounts to an *absolute defense* in any tort action based upon the invasion." *Id.* at 500 (emphasis added).

In his reply to the motion for summary judgment, Farrington asserts that there is a

---

**2.** Because Farrington raises the Employee Polygraph Protection Act of 1988, 29 U.S.C.A. § 2001 (West Supp.1993), (EPPA), for the first time on appeal, he has waived this argument. TEX. R.APP.P. 52(a).

fact issue about whether Sysco had a drug testing policy and that his consent was fraudulently obtained. It is undisputed by the deposition testimony of Farrington that he, as in *Jennings,* consented to both the drug and polygraph tests.[3] In his response to the motion for summary judgment, Farrington argues that his consent was fraudulently obtained based on the polygraph examiner's statements. The statements complained of were *after* the test was conducted. After the polygraph test, Farrington asserts that the polygraph examiner told him that if he signed an admission, she would report to Sysco that the polygraph test results were insufficient proof for termination.

We find Farrington's argument without merit. Thus, Farrington's consent negates any claim for invasion of privacy. *Jennings,* 765 S.W.2d at 500; *Texas Employment Comm'n,* 746 S.W.2d at 801–802.

We overrule Farrington's third point of error.

## IV. Infliction of emotional distress

In his fourth point of error, Farrington contends that the trial court erred in granting summary judgment on his claim of intentional and negligent infliction of emotional distress.

### A. Intentional infliction of emotional distress

 In order to assert a cause of action for intentional infliction of emotional distress, Farrington must show: (1) appellee acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) appellee's actions caused appellant emotional distress; and (4) the emotional distress suffered by appellant was severe. *Tidelands Auto Club v. Walters,* 699 S.W.2d 939, 941 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). The threshold question of whether "outrageous" conduct existed, as well as "severity" of the alleged distress is an issue of law to be determined by the courts. *Horton v. Mont-*

*gomery Ward & Co.,* 827 S.W.2d 361, 369 (Tex.App.—San Antonio 1992, writ denied); *see, e.g., Starrett v. Iberia Airlines of Spain,* 756 F.Supp. 292, 296 (S.D.Tex.1989).

Here, Farrington argues that his intentional infliction of emotional distress is based on the requirement that he submit to the drug and polygraph test, and his subsequent termination.

We have already determined that Farrington consented to the polygraph and drug test. Therefore, further review of the summary judgment record reveals that Farrington complains only of the fact of his termination and the motivation therefor, not the manner in which he was terminated. Decidedly, termination by itself is insufficient to state a claim for intentional infliction of emotional distress in Texas. *See Taylor v. Houston Lighting & Power,* 756 F.Supp. 297, 298 (S.D.Tex.1991). There is nothing in the summary judgment record other than the fact of termination of employment, and no evidence that the termination was affected in an extreme and outrageous manner. *See Diamond Shamrock Refining and Marketing Co. v. Mendez,* 844 S.W.2d 198, 202 (Tex. 1992); *McAlister v. Medina Elec. Coop, Inc.,* 830 S.W.2d 659, 665 (Tex.App.—San Antonio 1992, writ denied).

### B. Negligent infliction of emotional distress

 There is no recognized separate tort for negligent infliction of emotional distress in the employment context. *Conway v. Control Data Corp.,* 955 F.2d 358, 361 (5th Cir. 1992). More recently, on December 2, 1992, the Texas Supreme Court eliminated negligent infliction of emotional distress as a cause of action. *Boyles v. Kerr,* 855 S.W.2d 593, 593 (1993); *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 925–26 n. 2 (Tex.App.—Houston [1st Dist.] 1993, no writ).

We overrule Farrington's fourth point of error.

---

3. The following is a portion of Farrington's deposition testimony on this issue:

Q. Did you agree to take those tests?

A. I asked Harrison whether or not I had to do that in order to save my job, and he said yes, I did.
Q. And did you then agree to take those tests?
A. I did.

### V. Affidavit

In his fifth point of error, appellant contends that a portion of Michael Lacher's affidavit is based on hearsay because he is not an expert in testing controlled substances. Specifically, Farrington objects to the following:

> I found a black business card container on the floor of the vehicle in front of the driver's seat. Inspection of the business card holder revealed business cards and a 1-½' by 1' clear plastic bag containing a white powder that was suspected to be cocaine. The substance was tested at the Harris County Sheriff's Department Substation 3 and it was confirmed that the substance was in fact cocaine.

Rule 166a(f) of the Texas Rules of Civil Procedure requires that "supporting and opposing affidavits shall be made on personal knowledge [and] shall set forth facts as would be admissible in evidence." Lacher testified as to what he knew. Whether the substance was or was not actually cocaine is not an issue. The substance was suspected to be cocaine, and Farrington consented to a polygraph test. He later made a written admission. Thereafter, he was terminated in accordance with the published policies of his employer. Farrington does not cite, and we do not find any case that requires Lacher to be qualified as an expert under the rule 166a(f).

We overrule Farrington's fifth point of error.

We affirm the trial court's judgment.