**Opinion issued July 19, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-11-00884-CV

—————————————

**KATHIE O'DONOVAN, Appellant**

**V.**

**WEINGARTEN REALTY MANAGEMENT COMPANY, Appellee**

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2010-25466

## MEMORANDUM OPINION

Kathie O'Donovan, formerly a governmental compliance representative with

Weingarten Property Management Company, lost her job as a result of a reduction

in force after the company experienced a steep drop in real estate acquisition

activity following the 2008 economic downturn. O'Donovan sued Weingarten for unlawful employment practices under the Texas Commission on Human Rights Act (TCHRA), alleging that the reduction in force was pretextual and her termination was instead based on age and disability discrimination. Weingarten moved for summary judgment on both claims. The trial court granted summary judgment, and O'Donovan appeals. Finding that O'Donovan failed to raise a fact issue to rebut Weingarten's legitimate, nondiscriminatory reason for her termination, we affirm.

## Background

O'Donovan first worked for Weingarten as a part-time employee in the early 1980s. She voluntarily left her employment in 1985, but returned to Weingarten in 1997 to work as a part-time assistant to Victoria Brown, Weingarten's Director of Land Sales and Acquisitions. Brown and O'Donovan had worked together during O'Donovan's earlier stint at the company, and they had maintained a friendship through the intervening years.

Brown was aware that O'Donovan had three young children and that one child, in particular, had special needs that at times would require O'Donovan to be absent during working hours. All three of O'Donovan's children require regular medical and psychiatric treatment, and one attended a special school.

In 2002, Brown promoted O'Donovan to coordinator of thoroughfare projects, a full-time position. Brown offered O'Donovan some flexibility with her work schedule so that she could attend to her children's medical and personal needs. O'Donovan performed her job well, and, in 2004, she was promoted to the full-time position of government compliance representative. Through 2007, O'Donovan continued to receive satisfactory performance reviews as well as annual salary increases and bonuses.

Meanwhile, in June 2006, Weingarten promoted administrative assistant Alison Spencer to the position of assistant governmental compliance representative. A year later, Spencer was promoted to governmental compliance representative, the same position as O'Donovan and one of two such positions in the company at that time.

A few days after Spencer's promotion, O'Donovan suffered an injury that required her to take short-term disability leave. When O'Donovan returned to work three months later, in September 2007, the frequency of her absences from work increased significantly. Her 2007 performance review shows that O'Donovan was following a plan to catch up on incomplete work assignments, and had an overall performance rating of "meets expectations," at the center of the five-point scale.

By January 2008, O'Donovan's absences during working hours had increased to the point that it affected her ability to complete her assignments timely. At times, O'Donovan failed to clear the voicemail on her work cell phone; as a result, when she was away from the office, Brown was unable to leave her a message. O'Donovan attributed her absences to her own medical appointments, psychologist and psychiatrist appointments, personal issues, and her children's regular medical, dental, and orthodontic appointments, as well as their school and extra-curricular activities.

O'Donovan's February 2009 performance review stated that "O'Donovan's work product is generally good, and her job knowledge is excellent," and also noted that she "is able to think quickly on her feet and has a thorough understanding of her job and our processes." Her frequent and ongoing absences, however, led to a performance rating of "needs improvement," the second-lowest rating on the five-point scale. The review explained that "[d]ue to [O'Donovan's] absences [Brown has] been unable to assign [O'Donovan] projects that she would otherwise be responsible for handling. At this time [O'Donovan] is not producing an acceptable amount of work for the position." The review also noted that O'Donovan's absences had become a burden on the department and created morale issues within the team.

As a result of the performance rating, the company provided O'Donovan with a Performance Improvement Plan (PIP). The PIP required O'Donovan to be present in the office for a minimum of forty hours during the work week with a reasonable allowance for occasional absences. It explained that O'Donovan was expected to schedule multiple personal appointments in the same day to avoid missing hours on multiple days and to take a vacation day when the appointments kept her out of the office for more than three hours. The PIP also required O'Donovan to provide time logs detailing the number of hours per week she missed due to personal appointments, including specific arrival and departure times, and provide advance notice of all appointments. In addition, Brown required O'Donovan to calendar all of her potential appointments so that Brown could keep track of where O'Donovan might be if she were out of the office.

The PIP compliance period did not go smoothly. O'Donovan's absences decreased, but in July, she failed to attend a regular Monday morning meeting as a result of misreading an email. Later in July, Brown documented O'Donovan's "defensive, combative, [and] insubordinate behavior when O'Donovan refused to perform the job requested of her in the amount of time allotted causing a delay in a loan closing." The amount of work she accomplished during the period compared unfavorably to the amount accomplished by Spencer.

In August 2009, Weingarten held an internal meeting to address the effect of the overall decline in the economy on its acquisitions business. The review revealed that the number of acquisitions had dropped sharply. In contrast to the fifty-seven acquisitions the company made in the two-year period from 2005 to 2007, Weingarten completed only two acquisitions in 2008 and had not acquired any property during 2009. As a result of these conditions, the company concluded that it no longer needed two governmental compliance representatives to perform acquisition due diligence and decided to eliminate O'Donovan's position.

Weingarten informed O'Donovan that it was terminating her employment because it was eliminating her job function as part of a reduction in force. Weingarten retained Spencer, who was less than forty years of age, to fill the remaining governmental compliance representative position.

Before bringing this lawsuit, O'Donovan filed a complaint with the Equal Employment Opportunity Commission, claiming employment discrimination based on her age. She also claimed disability discrimination based on her association with her children.

## Discussion

### *Summary Judgment Standard of Review*

An appellate court reviews de novo a trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289

6

S.W.3d 844, 848 (Tex. 2009).  To succeed on a summary judgment motion under Texas Rule of Civil Procedure 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

To conclusively establish an essential element of the nonmovant's claim, the movant must show that reasonable minds could not differ as to the conclusion to be drawn from the evidence.  *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).  The evidence is reviewed in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827).  When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we affirm the summary judgment if any of the summary judgment grounds is meritorious.  *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

## *Employment Discrimination*

O'Donovan brings her age and disability discrimination claims under the Texas Commission on Human Rights Act (TCHRA), the state counterpart to Title VII of the Civil Rights Act of 1964.  *See* TEX. LAB. CODE ANN. § 21.001(1) (West 2006); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).  Texas

courts apply analogous federal statutes, and the cases interpreting them, to guide our understanding of the TCHRA. *See Toennies*, 47 S.W.3d at 476.

Under the TCHRA,

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE ANN. § 21.051 (West 2006).

In analyzing O'Donovan's age and disability discrimination claims, we apply the *McDonnell-Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–25 (1973); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2106 (2000)); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). Under this analysis, the plaintiff bears the initial burden to come forward with a prima facie case of discrimination. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Toennies*, 47 S.W.3d at 477. To make a prima facie case, the plaintiff must show that she (1) is a member of a class protected by the Act;

8

(2) suffered an adverse employment decision; (3) was qualified for the position held; and (4) was treated less favorably than similarly situated employees outside of the protected class. *See Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *see also Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied). If O'Donovan establishes a prima facie case, the burden shifts to Weingarten to articulate a legitimate, nondiscriminatory reason for her termination. *See Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *accord Farrington*, 865 S.W.2d at 251. If Weingarten meets this burden, the burden shifts back to O'Donnell to show that the stated reason was a pretext for discrimination. *See Toennies*, 47 S.W.3d at 477.

For the purpose of this appeal, we assume, without deciding, that O'Donovan made a prima facie case of both age and disability discrimination. Under *McDonnell-Douglas*, then, we examine whether O'Donovan raised a fact issue on either claim to rebut Weingarten's proffered legitimate, nondiscriminatory reason for terminating O'Donovan's employment. Weingarten offered two nondiscriminatory reasons for O'Donovan's termination: economic conditions and performance problems. We examine whether O'Donovan adduced any summary judgment evidence to rebut these reasons.

9

### Reduction in force

A reduction in force is itself a legitimate nondiscriminatory reason for termination. *EEOC v. Tex. Instrs. Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). In her deposition, O'Donovan conceded that the economic conditions for commercial property developers like Weingarten had slowed to the point that, by 2008, its property acquisition activities had ground to a halt and "everything was at a standstill." O'Donovan does not raise evidence that the economic conditions were a pretext: that Weingarten continued with two positions, or that her position was necessary despite the downturn.

### Absenteeism and performance issues

O'Donovan disputes Weingarten's estimation of the amount of time that she spent out of the office, but she admitted in her deposition that, at times, she gave little or no notice that she would be absent on a particular day. By signing the PIP, O'Donovan also conceded that she had not been spent sufficient time in the office. She agreed that Weingarten had a legitimate reason to ensure that it had consistent and reliable associates present at work to assist its customers and clients and wanted her to be in the office during working hours more consistently. In addition, O'Donovan admitted that her children's disability-related appointments were not the only reason for her absences, and that some absences were for her own personal appointments.

O'Donovan responds that she was more qualified than Spencer to continue in the position, citing the fact that Brown regularly assigned her—not Spencer—the more complex transactions to handle. As the Fifth Circuit has explained, however, "the issue is not whether [the plaintiff] or the retained employees were better qualified. An employer is entitled to make that decision for itself." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992). We hold that O'Donovan thus fails to raise a fact issue disputing whether these work performance issues served as a legitimate, nondiscriminatory reason for Weingarten's decision.

### *No remarks showing discriminatory animus*

As an alternative, O'Donovan claims that she raises a fact issue with Brown's direct evidence of discriminatory intent, because Brown commented to her about the age-consciousness of her own superiors. Remarks may raise a fact issue on O'Donovan's claims of age or disability discrimination if they are: (1) age or disability related, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 683 (5th Cir. 2001). O'Donovan falls short of meeting these requirements. She does not identify any individual who expressed discriminatory animus, the specific language used, when the individual might have made such a remark, or whether the individual played a part in the decision to eliminate

11

O'Donovan's job. "Stray remarks, remote in time from [the employee's] termination, and not made by anyone directly connected with the RIF decisions, are not enough to raise a fact question about whether [the employer's] reason for terminating [the employee] was pretextual." *Willrich*, 28 S.W.3d at 25. Brown's unspecified expressions of discomfort with her own aging do not themselves raise a fact issue showing that Brown had age-related discriminatory animus toward O'Donovan that played a role in the decision to terminate O'Donovan's employment. Nor does O'Donovan identify remarks by any decision-maker that might serve as circumstantial evidence of discriminatory animus toward O'Donovan's need to attend to her children's disabilities. Without circumstantial or direct evidence to support it, O'Donovan's subjective belief that age or disability was a factor in the termination decision is likewise insufficient to raise a fact issue. *See id.* We hold that the summary judgment evidence fails to raise a material fact issue to rebut Weingarten's legitimate, nondiscriminatory reasons for terminating O'Donovan's employment.

## Conclusion

The trial court properly granted summary judgment on O'Donovan's age and disability discrimination claims. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.