Doug GREATHOUSE, Appellant,

v.

ALVIN INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 01–99–00746–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 4, 2000.

Rehearing Overruled June 2, 2000.

Mark W. Stevens, Galveston, for appellant.

Jeffery L. Rogers, Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

## OPINION

TIM TAFT, Justice.

Appellant, Doug Greathouse, challenges a no-evidence summary judgment ren-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

dered in favor of appellee, Alvin Independent School District (Alvin ISD), against his claim of wrongful discharge based on racial discrimination. We address whether Greathouse established a prima facie case of racial discrimination, whether Alvin ISD proved a legitimate, non-discriminatory reason for the alleged discriminatory treatment, and whether Greathouse brought forward some evidence showing that Alvin ISD's reasons were a pretext for a discriminatory motive. We reverse.

### Facts

When reviewing a summary judgment, we look at the facts in the light most favorable to Greathouse, the nonmovant. Greathouse is a Caucasian male, who worked as a police officer within the DARE program for Alvin ISD and was fired for violating a facial hair policy.[1] Greathouse claims he did not violate the policy, and was fired as a result of racial discrimination directed against him.

Greathouse's supervisor was Officer Hubbard, an African–American male. Greathouse claims Hubbard discriminated against him based on his race. Greathouse maintains he was the victim of frequent false reports by Hubbard, who accused Greathouse of stealing a radio battery, an accusation Greathouse claims was a setup on Hubbard's part. Greathouse also claims Hubbard told him to wear a duty belt at all times, but that this was not proper under the DARE America agreement because wearing a duty belt would give children access to his radio and firearm. According to Greathouse, a co-worker, Sergeant Bobby Foerster, told Greathouse that Hubbard said anyone who wore a cowboy hat was a racist. Greathouse wore a cowboy hat. Greathouse claims Hubbard frequently humiliated him in public, by commanding him to stand at attention before Hubbard, and imposed impossible work demands that were not enforced on anyone else. In addition, Hubbard wears a tattoo on his hand that signifies African–American intolerance for Caucasians, according to Greathouse. Another co-worker, Guy Nichols, told Greathouse that Hubbard told him he hated Greathouse, that Greathouse was a "KKK kind of guy," and that Hubbard would do whatever it took to get rid of Greathouse. Chief Wayne Duncan, a Caucasian, was aware of conflict existing between Greathouse and Hubbard when he placed Greathouse under Hubbard's supervision.

Chief Duncan wrote a memo to Greathouse telling him to trim his moustache because it was too long. Greathouse claims that he did not violate this restriction, but complied. Chief Duncan then called Greathouse into his office and asked him why he had not shaved his moustache. Chief Duncan told Greathouse he was officially suspended, and recommended he be terminated.[2] Superintendent Tiemann terminated Greathouse soon thereafter.

### Procedural History

Greathouse sued Alvin ISD, alleging racial discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). Alvin ISD moved for summary judgment under rule 166a(i) of the Texas Rules of Civil Procedure. Alvin ISD argued it was entitled to summary judgment because Greathouse could not establish a

---

1. We do not address whether Greathouse is a member of a protected class under the TCHRA because Alvin ISD has not raised this issue on appeal. The United States Supreme Court has held that Title VII of the Civil Rights Act prohibits discrimination against any racial group, including Caucasians. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976).

2. Chief Duncan was later terminated for tampering with a governmental record. After pleading nolo contendere to charges of tampering with a governmental record, Chief Duncan was required, as a term of his felony deferred adjudication supervision, to cooperate on all EEOC litigation with Alvin ISD regarding past employees.

prima facie case of discrimination and because Alvin ISD had legitimate, non-discriminatory reasons for firing Greathouse. The trial court granted Alvin ISD's motion for no-evidence summary judgment on Greathouse's claim of racial discrimination. Greathouse brings a single ground on appeal, complaining that the trial court erred in granting summary judgment for Alvin ISD. Greathouse argues: (1) he established a prima facie case of racial discrimination; (2) Alvin ISD did not establish a legitimate, non-discriminatory reason for its actions; and (3) Alvin ISD's reasons for terminating Greathouse were a mere pretext for discrimination.

## Standard of Review

■ In a no-evidence summary judgment, the movant must specifically state the elements as to which there is no evidence. TEX.R. CIV. P. 166a(i). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged elements. *Id.* When reviewing the grant of a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant, and disregard all contrary evidence and inferences. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.—Houston [1st Dist.] 1999, no pet.). A no-evidence summary judgment is improperly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

## TCHRA

■ Greathouse brought his claim of discrimination under the TCHRA. TEX. LAB.CODE ANN. § 21.001— § 21.306 (Vernon 1996 & Supp.2000). The TCHRA ensures the execution of the policies embodied in Title VII of the United States Code by implementing the "correlation of state law with federal law in the area of discrimination in employment." TEX. LAB.CODE ANN. § 21.001(3) (Vernon 1996); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991). Because the TCHRA seeks to promote federal civil rights policy and because little case law interprets the TCHRA, we look to analogous federal precedent. *Schroeder,* 813 S.W.2d at 485; *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

## Prima Facie Case

■ Greathouse's first challenge concerns whether he established a prima facie case. To establish a prima facie case of employment discrimination, a plaintiff must show: (1) he was a member of a protected class, (2) he suffered an adverse employment action, and (3) non-protected class employees were not treated similarly. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Farrington,* 865 S.W.2d at 251. Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for any allegedly unequal treatment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Farrington,* 865 S.W.2d at 251. After the employer articulates legitimate, non-discriminatory reasons, the burden shifts back to the plaintiff to prove that the employer's articulated reasons are a mere pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Farrington,* 865 S.W.2d at 251. Although the burden of production shifts, the burden of persuasion remains continuously with the plaintiff. *McDon-*

*nell Douglas,* 411 U.S. at 803, 93 S.Ct. at 1825; *Farrington,* 865 S.W.2d at 251.

## Disparate Treatment

In moving for summary judgment, Alvin ISD argued that Greathouse did not produce any evidence showing that he was treated dissimilarly from other employees. This is the only element of the prima facie case that Alvin attacked in its motion for summary judgment.

■ Greathouse's response included excerpts of deposition testimony in which he stated that other officers were treated differently, specifically, that Hubbard was allowed to wear a moustache in violation of the facial hair policy. Greathouse also provided evidence that, while other officers were paid to attend a training school, Greathouse was not reimbursed for this expense. Greathouse was given what he described as impossible job duties that were not given to anyone else, and was disciplined and written up by Hubbard for omissions and minor violations for which other non-Caucasians were not written up or disciplined in any manner. Greathouse also claimed Alvin ISD did not perform a proper background check on his replacement, an African–American male. This evidence constitutes some evidence that Greathouse was treated differently than other employees.

## Non–Discriminatory Reason

Because Greathouse produced some evidence to establish a prima facie case of race discrimination, the burden shifted to Alvin ISD to prove a legitimate, non-discriminatory reason for the allegedly discriminatory treatment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Farrington,* 865 S.W.2d at 251. In moving for summary judgment, Alvin ISD argued that Greathouse was terminated for the following non-discriminatory reasons:

(1) Ignoring his superior officer's direct order to wear his hand-held radio;

(2) Misrepresenting to Hubbard that he could not carry his hand-held radio because another officer had taken the battery;

(3) Failing to carry his hand-held radio after Hubbard again ordered him to do so;

(4) Violating AISD's policy on facial hair;

(5) Failing to abide by AISD policy regarding facial hair despite a direct order from Chief Duncan on July 17, 1996 and bragging to another officer that he was testing Chief Duncan's determination;

(6) Failing to comply with Hubbard's instructions to wait to receive a memorandum and then refusing to return to headquarters to retrieve the memorandum; and

(7) Refusing to comply with instructions from his superior officer in response to an alarm at a high school and then walking away while being questioned.

■ Alvin ISD's motion established the following facts. After Chief Duncan ordered him to carry a hand-held radio, Greathouse told Chief Duncan that he did not think he should have to comply with orders like carrying a hand-held radio. Master Sargent Dominguez, who prepared a report for Chief Duncan, stated in an affidavit that Greathouse said he would not obey any orders from Hubbard and would not communicate with Hubbard. In light of this display of insubordination, Dominguez recommended that Greathouse be suspended or placed on probation. Although Chief Duncan decided to give Greathouse another chance to correct his behavior, Greathouse again told Chief Duncan that he should not have to carry a hand-held radio. Chief Duncan then notified Greathouse, by written memorandum, that he was in violation of the Alvin ISD facial hair policy. An attachment to Duncan's memorandum spelled out that policy. Greathouse acknowledged receipt of this memorandum. Officer Mezzino, a co-

worker, stated that Greathouse told her he intentionally did not trim his mustache to see if Chief Duncan would fire him.

Alvin ISD's evidence corroborates its claim that Greathouse was fired because he refused to follow orders from superiors, refused to carry a hand-held radio, and refused to comply with Alvin ISD's facial hair policy. Furthermore, Officer Hubbard testified in his affidavit that he was not involved in the decision to terminate Greathouse; this decision was made by Chief Duncan. Chief Duncan also stated, in his affidavit, that the decision to terminate Greathouse was not based on any racial motivation. This evidence established non-discriminatory explanations for terminating Greathouse. *See Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 64 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Rios v. Texas Commerce Bancshares, Inc.,* 930 S.W.2d 809, 818 (Tex.App.—Corpus Christi 1996, writ denied) (holding that insubordination was a non-discriminatory reason for termination).

### Pretext

Because Alvin ISD's summary judgment demonstrated non-discriminatory reasons for terminating Greathouse, the burden shifted back to him to bring forward some evidence that Alvin ISD's reasons were a pretext for an underlying, racially motivated reason. *McDonnell–Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Farrington,* 865 S.W.2d at 251.

■ Greathouse's response to Alvin ISD's motion for summary judgment includes his affidavit testimony that Hubbard, his supervisor, discriminated against him because of his race through false reports. Hubbard accused Greathouse of stealing a radio battery, which Greathouse claimed was a setup on Hubbard's part. Greathouse claimed Hubbard's instruction to wear a duty belt at all times was not proper under the DARE America agreement because wearing a duty belt would give children access to his radio and firearm. Sergeant Foerster told Greathouse,

who wore a cowboy hat, that Hubbard said that anyone who wore a cowboy hat was a racist. Hubbard would frequently humiliate Greathouse publicly by requiring him to stand at attention. Hubbard gave Greathouse impossible work demands that were not enforced on anyone else, and Hubbard wears a tattoo that Greathouse contends shows African–American intolerance for Caucasians. Another co-worker told Greathouse that Hubbard said he hated Greathouse, that Greathouse was a "KKK kind of guy," and that Hubbard would do whatever it took to get rid of Greathouse. Chief Duncan often reprimanded Greathouse based on information, provided by Hubbard, that Greathouse was insubordinate. Moreover, Greathouse claimed he did not violate the facial hair policy for which Alvin ISD claims he was terminated. These allegations raise a genuine issue of material fact regarding whether Alvin ISD's reasons for terminating Greathouse were pretextual.

■ Alvin ISD argued in its motion for summary judgment, and now contends on appeal, that Greathouse's discrimination claim is based on conclusory allegations and speculative beliefs, which are insufficient to maintain a cause of action under the TCHRA. *See Patton v. United Parcel Serv. Inc.,* 910 F.Supp. 1250, 1265, 1267–68 (S.D.Tex.1995); *Farrington,* 865 S.W.2d at 251. Summary judgment for the defendant is proper when a plaintiff claiming race discrimination presents only conclusory allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings. *See Farrington,* 865 S.W.2d at 251; *Gold v. Exxon Corp.,* 960 S.W.2d 378, 384–85 (Tex.App.—Houston [14th Dist.] 1998 no pet.); *see also Rios,* 930 S.W.2d at 818 (plaintiff "sensed" that he was discriminated against because he was Hispanic; such does not demonstrate pretext); *Azubuike,* 970 S.W.2d at 64–65 (single, remote comment by employer to "socialize less with your Nigerian friends" is no evidence of pretext); *Scales v. Slater,* 181 F.3d 703, 712 (5th Cir.1999) (stray

remark by employer that plaintiff find a "black mentor" does not create a fact issue regarding discriminatory intent).

The comments Greathouse attributes to Hubbard far exceed mere stray remarks or improbable inferences. Greathouse claims that Hubbard not only wears a tattoo signifying African–American supremacy, but also stated that Greathouse was a "KKK kind of guy" and a racist, and that Hubbard would do whatever it took to get rid of Greathouse. Greathouse's evidence raises a genuine issue of material fact concerning whether Alvin ISD's stated, non-discriminatory reasons for terminating Greathouse were merely a pretext to cover up underlying racial motivation. *See Northwestern Resources Co. v. Banks*, 4 S.W.3d 92, 97–98 (Tex.App.—Waco 1999, pet. filed) (Disparate treatment at work where plaintiff was subjected to conduct that Caucasian employees were not subjected to was some evidence of pretext.); *Primeaux v. Conoco, Inc.*, 961 S.W.2d 401, 407–408 (Tex.App.—Houston [1st Dist.] 1997, no writ) (Employer's claim that employee not rehired because of assumption that employee had not been released by doctor to return to work raised genuine issue of material fact regarding whether employer's reason for not rehiring disabled employee was pretextual.); *Willrich v. M.D. Anderson Hosp. & Tumor Institute*, 1 S.W.3d 831, 836 (Tex.App.—Corpus Christi 1999, writ filed) (Numerous racial statements made at work raised a genuine issue of material fact regarding pretext.).

On appeal, Alvin ISD contends Greathouse has not established the required causal connection between the discriminatory conduct by Hubbard and the adverse employment action taken by Chief Duncan and superintendent Tiemann. Alvin ISD did not, however, raise this argument in moving for summary judgment. Because a summary judgment cannot be affirmed on a ground not presented to the trial court, we may not consider this issue now. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993);

*Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, no writ); *See* Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal.").

Because Greathouse has raised a genuine issue of material fact concerning whether he was treated dissimilarly from non-Caucasian employees and whether Alvin ISD's stated, non-discriminatory reasons for terminating Greathouse were a pretext for racially motivated reasons, the trial court erred in granting summary judgment in favor of Alvin ISD on Greathouse's wrongful termination cause of action.

We sustain Greathouse's point of error.

### Conclusion

We reverse the judgment and remand the case to the trial court.