

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00240-CV

_____

TEXAS DEPARTMENT OF STATE HEALTH SERVICES, APPELLANT

V.

LONZO KERR, JR., APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-A-GN-18-001738; Honorable Maria Cantu Hexsel, Presiding

February 16, 2022

OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, the Texas Department of State Health Services ("TDSHS") filed this interlocutory appeal, pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, from the trial court's denial of its plea to the jurisdiction.[1] Through two

---

[1] TDSHS filed a plea to the jurisdiction and a motion for summary judgment, in the alternative. The trial court denied both motions. Although the grounds underlying each are the same, in this interlocutory appeal, we do not reach the merits of the summary judgment.

issues, TDSHS contends the trial court erred because Lonzo Kerr, Jr., Appellee, failed to establish a prima facie case of race and/or age discrimination under the requisite law and, even if he did so, he failed to show TDSHS's reasons for terminating his employment were both false and a pretext for what was in fact race and/or age discrimination. We agree with TDSHS's position. Consequently, we reverse the order of the trial court and render judgment granting TDSHS's plea to the jurisdiction.[2]

## BACKGROUND

Kerr has a long history of working for the State of Texas beginning in the late 1970s.[3] Over the ensuing years, he worked for the Texas Department of Human Services and for the Texas Department of Health. He served in many roles, including senior investigator and Director of Criminal Investigations. In that role, he conducted complex investigations into fraud, waste, abuse, regulatory non-compliance, security breaches, and loss of confidential data. In 2004, Kerr began working for the Office of Inspector General ("OIG") as a Manager IV/Supervising Investigator, performing duties similar to those he performed while working at the Department of Health. Kerr also supervised the Vital Records Fraud Unit at OIG.

In November 2004, Kerr began working in the Vital Statistics Unit ("VSU") at TDSHS as a Director I/Deputy State Registrar. He remained in that position until his retirement in 2008. In 2010, Kerr returned to work at VSU as a Manager IV/ Deputy State

---

[2] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] The record indicates there was a short gap in employment with the State during which Kerr pursued other opportunities.

Registrar, performing the same job duties he had in 2008. Prior to Kerr's returning to work in 2010, the Chief Operating Officer, Ed House, submitted a justification for offering the position to executive leadership. In the request, House recommended Kerr for the management position because Kerr had previously held that position in addition to many other management positions in state government. House also stated that Kerr had a "documented background as being innovative and having the experience and ability to develop and implement modern solutions for automated systems; program policies and procedures for meeting Vital Records program goals and objectives." House recommended that executive management approve Kerr for the position and explained that Kerr's "previous management experience and accomplishments afford him the skills, knowledge and abilities that are vitally needed to quickly move the Vital Statistics Unit forward in the areas of Information Technology; personnel matters; facility and system operations and security; including our federal, state, local and public partners and stakeholders." Based on House's recommendation, Kerr was re-hired to the management position and held that position until his termination.

Kerr's termination stemmed from a missing vital statistics book.[4] During a shelving project in 2012-2013, a VSU employee, Chris Guerrero, discovered a VSU records book containing approximately 500 birth certificates was missing.[5] Guerrero and a supervisor,

---

[4] The missing book, Volume 45, 022001-022500, Birth 1993, contained 500 Texas birth records. Each birth record contains the name, social security number, and dates of birth of the record holder and each parent. Because the book has not been located, "1500 Personal Identifying Information may be compromised."

[5] Subsequent investigation revealed that the book had been missing since November 2012 when a request for a court-ordered name change apparently necessitated the physical removal of the book from its designated shelf. The record also shows that the records contained within the missing book were "imaged and saved in 2009."

Geraldine Harris, conducted a search for the book; however, it was not located. At that time, another TDSHS employee, James Abshier, informed Kerr the book was missing. Kerr did not, however, follow up to determine whether the book was found, and he did not report the missing book to TDSHS leadership, OIG, or the TDSHS Privacy Officer. In May 2016, Jamie Ross, another TDSHS employee, realized the book was missing and conducted another unsuccessful search for it. Ross also reported to Kerr that the book was missing.

In early June 2016, Guerrero met with House and Barbara Klein, General Counsel for TDSHS, to discuss concerns about Guerrero's stress levels. During that meeting, Guerrero discussed the missing book with them. House and Klein then referred the issue of the missing book to OIG[6] to investigate whether senior management at VSU was aware of the missing book and whether they failed to report it.

OIG completed its investigation in July 2016. It substantiated allegations that there were significant delays in initiating the process of proper reporting to OIG for the potential unauthorized disclosure of personal identifying information and that approximately 1,500 individuals' personal identifying information may have been compromised due to the inaction of VSU employees. This event was characterized as a "privacy incident" for TDSHS policy purposes.[7] OIG's investigation also found that VSU members reported the

---

[6] According to the record, OIG has the legal responsibility to investigate fraud at TDSHS.

[7] It was the policy of the TDSHS Privacy Office to notify all individuals potentially at risk of identity theft as the result of a "privacy incident" and to provide credit monitoring and identity theft protection for those persons.

book as missing to supervisors as early as 2012 and that the book was still missing as of June 2016.

After TDSHS received OIG's investigation report, it consulted with human resources and legal services and decided to terminate the employment of Harris and Kerr for failing to make proper notifications about the missing book. Kerr received a Notice of Possible Disciplinary Action ("NOPDA") on July 29, 2016. In the NOPDA, House explained that Kerr admitted he was responsible for the management and oversight of the security of vital records[8] and that Kerr understood the process to report potential fraud, waste, and abuse allegations. The NOPDA also included statements alleging that Kerr had the duty as Deputy State Registrar to ensure that the missing book was *timely reported* to OIG, TDSHS leadership, or the TDSHS Privacy Office because information contained in the missing book could be used to commit fraud. Furthermore, TDSHS alleged Kerr was aware of the missing book for more than three years yet did nothing to ensure proper notifications were made. According to TDSHS, Kerr's failure to report the missing book violated TDSHS Policy AA-5003, Section 5.1.4, which requires the *prompt reporting* of privacy incidents to a supervisor of the TDSHS Privacy Office.[9] TDSHS also

---

[8] Kirk Cole testified that Kerr was sometimes referenced as a security officer but stated he did not believe any official duties prescribed him as being in charge of security of the books in the "stacks," the area in which the books are stored. Cole testified that "inherent in the preservation and the security of—of these vital records is to keep them secure." Cole said this was the kind of duty anyone working in the area would have. In his deposition, Kerr testified he did not agree with the statement in the NOPDA and said that his "security responsibilities related only to the facility. My security responsibilities did not have any authority or responsibility over the records or tracking the records."

[9] The NOPDA includes the statement that Kerr simply "assumed the book had been found."

stated Kerr violated several work rules found in the Health and Human Services Human Resources Policy Manual.[10]

Kerr was given the opportunity to provide a rebuttal to the NOPDA by August 1, 2016. He did so on that date. The rebuttal focused mainly on the efforts made to locate the book but, according to TDSHS, did not fully address the ultimate concern caused by the missing book and the failure by senior management, including Kerr, to make the proper reports that the book was missing. Kerr stated, however, that it was "not clear when missing records should be reported according to agency policies and procedures."[11] He argued that the statement that he did not report the missing book to a supervisor was inaccurate. He stated that the subject of the missing book was discussed during a weekly manager's meeting of all VSU managers and supervisors and that a search for the book was conducted in 2013. That search was conducted by Guerrero, a person Kerr said was "a higher level (classification)" than he and that "she too could have reported a missing book and she had no duty or responsibility to report her actions to me." After reviewing

---

[10] These included Work Rules 1, 2, 11, and 28 which provided as follows:

1. be familiar with and follow all HHS policies and procedures relating to job performance and work rules;

2. perform their job duties, meet HHS standards for job performance, and follow job-related instructions from HHS supervisors;

11. protect state information and property;

28. not act in a manner that interferes with the proper performance of duties, office operations, or HHS agency and program goals and objectives, or act in a manner that violates HHS agency or program rules, regulations, or policies.

[11] The record shows that Department of State Health Services Policy AA-5042 5.0 states, "All employees shall report violations of this policy to the OIG." Section 6.0 states, "DSHS employees shall immediately report all allegations of fraud and other unlawful activities to the OIG as directed by OIG procedures." Kerr appears to argue that it was not his understanding that a missing book fell into a violation of the policy, fraud, or other unlawful activities for which reporting to the OIG was required. He contends that because there was no privacy breach, these policies were not violated.

6

the rebuttal, House issued the decision to terminate Kerr with a Notice of Disciplinary Action ("NODA").

On September 8, 2016, Kerr filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Kerr is a Black man, aged seventy-three at the time of his termination from employment. House, the person who hired Kerr and who ultimately made the decision to terminate his employment while choosing to suspend rather than dismiss Guerrero, is also a Black man, aged sixty-four at the time Kerr was terminated from employment.[12] Kerr alleged that in making the decision to terminate him, the TDSHS discriminated against him on the basis of his race and age because he and Guerrero were treated differently for the same misconduct. On February 8, 2018, the Texas Workforce Commission issued a "right to sue" letter to Kerr.

Kerr filed his lawsuit on April 10, 2018. Through it, he alleged TDSHS discriminated against him based on his race and age in violation of provisions of the Texas Commission on Human Rights Act ("TCHRA").[13] The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) (citing TEX. LABOR CODE

---

[12] At the time of the suit, House was sixty-eight years old and retired. In his appellate brief, Kerr states, "[t]o further complicate matters and unduly prejudice Kerr, DSHS has denied Kerr access to depose the alleged decision maker of his termination, DSHS COO Ed House, since last March." TDSHS "has represented, without evidence, that House's health has prevented his deposition during the entire time from March up to the present." However, Kerr notes that TDSHS was able to obtain a sworn statement from House to use in its motion without any offer to Kerr to take House's deposition.

[13] The Texas Commission on Human Rights Act (TCHRA) is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII), that provides the framework for employment discrimination claims in Texas. TEX. LABOR CODE ANN. §§ 21.001-.556.

ANN. § 21.254). By his suit, Kerr sought damages, attorney's fees, and costs. TDSHS filed a plea to the jurisdiction and motion for summary judgment on June 21, 2021. In that plea, it argued its sovereign immunity was not waived because Kerr failed to establish a prima facie case of either race or age discrimination under the TCHRA and even if he had done so, he failed to prove TDSHS's reasons for termination of his employment were false and a pretext for discrimination. The trial court heard TDSHS's plea to the jurisdiction on July 20, 2021. On September 1, 2021, the trial court issued an order denying the plea. TDSHS challenges that denial through this interlocutory appeal.

**ANALYSIS**

**STANDARD OF REVIEW AND APPLICABLE LAW**

Governmental immunity generally protects state subdivisions from suit unless the immunity has been waived by the constitution or state law. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). Immunity may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771. A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction *de novo*. *See Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016); *McLane Co., Inc. v. Texas Alcoh. Bev. Comm'n*, 514 S.W.3d 871, 874 (Tex. App.—Austin 2017, pet. denied).

Usually, the plea to the jurisdiction challenges whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Limas v. City of Dallas*, No. 05-19-01223-CV, 2021 Tex. App. LEXIS 6006, at *19 (Tex. App.—

8

Dallas July 28, 2021, no pet.) (mem. op.) (citation omitted). When, as in this case, the plea to the jurisdiction challenges the existence of jurisdictional facts, then, like the trial court, we "consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Limas*, 2021 Tex. App. LEXIS 6006, at *19-20 (citations omitted).

When a plea challenges the existence of jurisdictional facts, the standard of review mirrors that of a traditional motion for summary judgment. *Id.* (citation omitted). The party asserting immunity (usually the defendant) initially carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. *Id.* (citation omitted). "If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.* at *20 (citation omitted). A reviewing court must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving all doubts in the plaintiff's favor. *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). S*ee City of Dallas v. Siaw-Afriyie*, No. 05-19-00244-CV, 2020 Tex. App. LEXIS 7908 (Tex. App.—Dallas Oct. 1, 2020, no pet.) (mem. op.)).

If the pleadings and jurisdictional evidence create a fact question, then the trial court cannot grant the plea, and the issue must be resolved by the fact finder. *Limas*, 2021 Tex. App. LEXIS 6006, at *20-21 (citation omitted). If, however, the relevant evidence is undisputed or if the plaintiff fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Id.* (citations omitted).

As previously stated, the TCHRA waives immunity when the plaintiff states a claim for conduct that actually violates the statute. *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 770; TEX. LABOR CODE ANN. § 21.254. The TCHRA prohibits an employer from committing an "unlawful employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age." *Id.* at § 21.051. The TCHRA also protects employees who are "40 years of age or older." *Id.* at § 21.101. Typically, an employer commits an unlawful practice "because of" an employee's age if the employee's age was "a motivating factor" for the alleged wrongful act or practice, "even if other factors also motivated the practice." *Id.* at § 21.125(a). Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race, the employer "discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id.* at § 21.051(1). The Texas Legislature modeled the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied). *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (stating same). Therefore, when analyzing a claim brought under the TCHRA, we look to state cases as well as analogous federal statutes and the cases interpreting those statutes for guidance. *Quantum Chem. Corp.*, 47 S.W.3d at 476.

After the plaintiff establishes a prima facie case, the burden of production shifts back to the defendant-employer to articulate legitimate non-discriminatory reasons for any allegedly unequal treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,

10

93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Once the employer articulates a non-discriminatory reason, the burden again shifts back to the plaintiff to prove that the articulated reason is a mere pretext for unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804; *Greathouse*, 17 S.W.3d at 423. Although the burden of production shifts between the parties, the burden of persuasion "remains continuously with the plaintiff." *Greathouse*, 17 S.W.3d at 423. *See Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 813-14 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

TDSHS is a state entity and therefore, sovereign immunity bars any suit against it unless the Legislature has expressly waived that immunity. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 n.4 (Tex. 2017). The TCHRA waives sovereign immunity from suit, but only if the plaintiff alleges facts that would establish that the state agency violated the TCHRA and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that allegation. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 304-05 (Tex. 2020) (citing *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 770-71). When determining whether a plaintiff has met this burden, we must assume that all evidence supporting the plaintiff's allegations is true, and we must resolve all doubts and make all reasonable inferences in the plaintiff's favor. *Flores*, 612 S.W.3d at 305.

In its jurisdictional plea and in this court, TDSHS argues it did not waive its sovereign immunity against Kerr's claim because (1) Kerr failed to establish a prima facie case of either race or age discrimination and (2) TDSHS established that Kerr's race and

11

age were not motivating factors behind his employment termination and that Kerr submitted insufficient evidence to the contrary.

To establish unlawful discrimination, a plaintiff may rely on either direct or circumstantial evidence. *Flores*, 612 S.W.3d at 305 (citing *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 782). When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. Id.* at 305 (citing *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 764, 782). Under this framework, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the questioned employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305 (citations omitted).

TDSHS argues Kerr failed to establish a prima facie case regarding either race or age discrimination. The requirements for establishing a prima facie case "vary depending on the circumstances." *Flores*, 612 S.W.3d at 305 (citing *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017)). Subjective beliefs of discrimination alone are insufficient to establish a prima facie case. *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 554 (Tex. App.—Dallas 2006, no pet.) (citing *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

In a race-discrimination case, the plaintiff establishes a prima facie case with evidence that he (1) was a member of a protected class, (2) suffered an adverse

employment action, and (3) was treated less favorably than similarly situated members outside of the protected class. *Limas*, 2021 Tex. App. LEXIS 6006, at *23 (citation omitted). *See McDonnell Douglas Corp.*, 411 U.S. at 802; *McCoy*,183 S.W.3d at 554.

In an age-discrimination case, the plaintiff establishes a prima facie case with evidence that he (1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Flores*, 612 S.W.3d at 305 (citations omitted).

In cases where an employer claims to have fired the plaintiff for violating a work rule, the plaintiff can prove the final element of his prima facie case by showing that he did not violate the rule or that employees outside his protected group who engaged in similar acts were not punished similarly. *Hicks v. Geodis Logistics LLC*, No. 3:20-CV-1115-N, 2021 U.S. Dist. LEXIS 220820, at *4-5 (N.D. Tex. Nov. 16, 2021) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

### APPLICATION

### ISSUE ONE—PRIMA FACIE CASE OF RACE OR AGE DISCRIMINATION

TDSHS argues that Kerr has failed to establish a prima facie case of race or age discrimination because he lacked direct evidence of discrimination and his reliance on

13

circumstantial evidence was insufficient.[14] *See Flores*, 612 S.W.3d at 305 (citing *McDonnell Douglas Corp.*, 411 U.S. 792).

In his pleadings below, Kerr argued he put forth more than sufficient evidence to carry his burden in this matter. He contended Guerrero allegedly discovered the missing book before he knew about it and discussed the missing book with their supervisor, Harris.[15] Thus, Kerr asserted, he had no duty to report the missing book to Harris because he was relying of the fact that Guerrero had already done so.[16] Harris averred similarly. Guerrero testified she "did not recognize [the missing book] to be a matter that needed to be reported to anybody but my supervisor." Guerrero also testified she did not believe there was any reason that Kerr would have a different duty to report the missing book than she did. Several witnesses, including Cole, noted that the duty to report falls to every employee. As such, Kerr argued, he and Guerrero had the same duty to report yet were treated differently for allegedly similar failures. This, he asserted, was sufficient to show he had been treated differently than a similarly situated TDSHS employee.

---

[14] Kerr also alleged that House, the person who both hired him and terminated his employment, discriminated against him based on his race and age. However, TDSHS points out that House belongs to the same protected classes as Kerr given that House is both a Black man and over the age of forty. As such, TDSHS contends, it is entitled to a bolstered inference that it did not discriminate against Kerr based on his race or age. We need not address TDSHS's "bolstered inference" argument here.

[15] The record indicates that it is possible Guerrero did not actually report the missing book. Rather, she simply answered questions about the missing book during a meeting she had with General Counsel concerning work stress. She testified she did not report the book but that the subject was raised with her. However, there is also evidence in the record that she met with Harris twice to discuss the missing book.

[16] The *Notice of Suspension Without Pay* issued to Guerrero contains the statement that the "OIG reporting obligation is not satisfied by an employee's report of such allegations to the employee's supervisor, especially if an employee believes—as [Guerrero] apparently did in this situation—that the supervisor to whom a report has been made has not subsequently reported these allegations to the OIG."

Further, Kerr contended, TDSHS continued to search for the book and even hired someone to attempt to locate it through a complete assessment and inventory of all of the records. OIG also investigated the missing book and determined there was no evidence of waste, fraud, or abuse in either the book being missing or in the time the book has been missing. As such, Kerr argued, he had no duty to report the missing book because there was no evidence of waste, fraud, or abuse or evidence of a privacy breach. Kerr argued that the failure to report the book was a pretextual reason for TDSHS to terminate him. He pointed to the fact that both he and Harris were terminated based on the failure to report the missing book, but Guerrero was not. Instead, Guerrero was suspended without pay for three consecutive workdays. Kerr (male) and Harris (female) are both Black. Both are also older employees. Kerr was seventy-three at the time of his termination and Harris was sixty-seven years old at the time of her termination. Kerr points to the contrary facts with respect to Guerrero, an Asian woman in her forties at the time at issue.[17]

To establish a violation of the TCHRA, a plaintiff must show that he or she was (1) a member of the class protected by the TCHRA, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592

---

[17] During her deposition in April 2021, Guerrero stated she is of Filipino descent and, at the time of her deposition, was fifty-one years old. She testified she was still employed with VSU, however, in a different role. The record shows that as of September 30, 2016, VSU had 138 employees. Of those, forty-eight (34.78%) were White, forty-five (32.61%) were Hispanic, forty (28.99%) were Black, four (2.90%) were Asian/Pacific Islander, and one (0.72%) was American-Indian/Alaskan Native.

(Tex. 2008). TDSHS contends Kerr failed to establish the fourth element regarding race or age discrimination and thus, has not established a prima facie case of discrimination.

As stated above, in order to establish the fourth element, Kerr was required to submit evidence that he was "treated less favorably than *similarly situated* members of the opposing class." *Id.* "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). While the circumstances do not have to be identical, they must be "nearly identical" and "[e]mployees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Flores*, 612 S.W.3d at 312 (citing *Autozone*, 272 S.W.3d at 594). *See Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917 (citations omitted) (employees "are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct"). Additionally, "to establish that employees are 'comparable in all material respects,' a plaintiff must also show 'that there were no differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citations omitted). A plaintiff must submit "comparative evidence that she was treated less favorably than those who did not fit within the protected class." *Flores*, 612 S.W.3d at 311 (citation omitted). Whether "two employees are 'similarly situated' generally presents a question of fact for the jury." *Wallace v. Seton Family of Hosps.*, 777 F. Appx. 83, 89 (5th Cir. 2019) (citing *Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 214-15 (5th Cir. 2004); *George v. Leavitt*, 407 F.3d 405,

414, 366 U.S. App. D.C. 11 (D.C. Cir. 2005) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

As support for his position that he has met his burden, Kerr states in his pleadings below that he is a Black man in his seventies. He alleged he was treated less favorably than Guerrero, an Asian woman in her forties. He argued he was subjected to disparate treatment due to his age and race as shown by the fact that his employment was terminated while Guerrero was merely suspended for three workdays. He further asserted that Guerrero had the same supervisor and reporting duties as he but did not expressly argue the two had exactly the same job duties or same position or were required to adhere to the same work standards. He essentially argued that because they each had the same duty to report missing books and had similar manager titles and reported to the same person, the two were "similarly situated" as set forth under the requisite law.[18]

While we agree that both employees had the same duty to report the missing book[19] and indeed both held manager titles and reported to the same supervisor, we disagree that the two were sufficiently similarly situated as required by law. Guerrero had worked with the State for twenty years and at the time, was a Project Manager IV, and was the VSU's business modernization director. She testified she "did not have formal job duties" but that her duties were "simply conveyed" to her by House. According to the record, Guerrero was responsible for the coordination and oversight of planning and

_____

[18] In Kerr's response to the NOPDA, he stated he had "served in management or supervisory roles since 1981 and have never, ever been subject to any disciplinary action what-so-ever, not even a reprimand in all of those years."

[19] The record indicates that a number of employees with differing work responsibilities and titles possessed the same duty to report missing books.

initiation of projects for VSU. She supervised four non-management staff who were responsible for human resources, facilities management, IT, and budget related tasks. She was also the "functional manager for the contract between TDSHS/VSU and the Social Security Administration . . . [she was] or should have been aware that this contract required VSU/TDSHS to notify the Social Security Administration (SSA) 'immediately' about any lost, or possibly lost, 'personally identifiable information' (PII)." During the hearing, TDSHS stated that Guerrero had "a higher salary and a higher ranking than [Kerr]," but Guerrero testified in her deposition that she did not know whether that was true.

Kerr, on the other hand, had worked with the State for some thirty-five years, was the Deputy State Registrar, and served as second-in-command to Harris. In that role, he was responsible, along with Harris, for the control and oversight of VSU. He was responsible for the management and oversight of the sales, supplemental changes, and security of vital records and the facilities which housed them. Cole testified he believed Kerr had a "significant responsibility in raising any security concerns [regarding the books] that he had." TDSHS also points out that Guerrero was an at-will employee with no grievance rights; whereas, Kerr was not an at-will employee and had grievance rights, which he exercised. *See Flores*, 612 S.W.3d at 312 ("[e]mployees who hold different jobs are not similarly situated . . ."). We also note that the *Position Statement* concerning Kerr's EEOC charge contains the statement, "[t]he individual [Kerr] compares himself to is not similarly situated."

Furthermore, as to conduct, TDSHS argues Kerr's conduct and Guerrero's conduct were different with regard to the reporting of the missing book. Markedly, when Guerrero

18

discovered the missing book, she discussed it with Harris on two occasions.[20]  She again discussed it during her meeting with House and General Counsel for TDSHS.  Kerr admittedly did not mention the missing book to Harris because, according to him, Harris was already aware of it and he believed there was no reason for him to report it.  While we acknowledge Guerrero's testimony that she discussed the missing book when asked about it in a meeting concerning her stress levels, she nevertheless discussed the book with her supervisor, something Kerr did not do.  The record indicates that at least two employees reported to Kerr that the book was missing.  Yet, Kerr admits he did not report the missing book because he "would have assumed the book had been found."

According to documentation in the record, because Guerrero reported the missing book and House did not want to discourage employees from doing so in the future, he determined suspension without pay was appropriate for Guerrero.  Guerrero's actions were specifically cited as the reason for the differential treatment from that of Kerr.  *See Hous. Cmty. Coll. v. Lewis*, No. 01-19-00626-CV, 2021 Tex. App. LEXIS 5146, at \*25 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) ("to establish that employees are 'comparable in all material respects,' a plaintiff 'must produce evidence that the plaintiff and comparator . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the

---

[20] The record shows that on July 31, 2013, Guerrero "personally met with Geraldine Harris and notified her regarding the missing book."  Guerrero provided Harris with the volume number of the book and her actions in attempting to locate it.  Guerrero met with Harris a second time after the book remained missing.  Guerrero asked Harris for further direction and Harris said, "I suppose this is something we need to report to OIG?"  Guerrero responding by telling Harris that she was reporting the matter to her.  Guerrero stated she believed Harris's question to be "odd" because she thought she was not the person to determine whether to notify OIG.  Rather, Harris, as State Registrar, should have known the protocol for reporting.

employer's treatment of them for it'")). *See also McKenna v. Baylor Coll. of Med.*, No. 01-15-00090-CV, 2016 Tex. App. LEXIS 4460, at *13 (Tex. App.—Houston [1st Dist.] Apr. 28, 2016, no pet.) (mem. op.) ("If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer,' the employees are not similarly situated.") (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Wallace v. Methodist Hosp. Sys., Inc.*, 271 F.3d 212, 221-22 (5th Cir. 2001)); *Smith v. Wal-Mart Stores* (*No. 471*), 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam) (plaintiff's burden was "to show that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained"). We note also that courts have found that "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Donaldson*, 495 S.W.3d at 436 (citing *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

Given these facts, we find that Kerr failed to establish Guerrero was "similarly situated" to him under nearly identical conduct and circumstances. As such, he has failed to establish that he was treated less favorably than similarly situated members of the opposing class. Because Kerr has been unable to establish this fourth element of a cause of action under the TCHRA, TDSHS's immunity was not waived. *AutoZone, Inc.*, 272 S.W.3d at 592; TEX. LABOR CODE ANN. § 21.254. Consequently, the trial court erred in denying TDSHS's plea to the jurisdiction. We sustain TDSHS's first issue.

## ISSUE TWO—STATED REASONS FOR TERMINATION WERE PRETEXT FOR RACE OR AGE DISCRIMINATION

Furthermore, because Kerr failed to meet his burden to create a fact issue on his prima facie case of race or age discrimination, the burden never shifted to TDSHS to prove a legitimate, nondiscriminatory reason for suspending or terminating Kerr. Consequently, we need not address the arguments regarding the remaining aspects of the *McDonnell Douglas* framework. *See Flores*, 612 S.W.3d at 312 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (noting burden shifts to defendant only "if the plaintiff succeeds in proving the prima facie case")). *See also Dallas Indep. Sch. Dist. v. Allen*, No. 05-16-00537-CV, 2016 Tex. App. LEXIS 13650, at *18-19 (Tex. App.—Dallas Dec. 22, 2016, pet. denied) (mem. op.). However, in the event it were determined upon further appeal that a prima facie case was established, we find it appropriate to address TDSHS's second issue. Via that issue, TDSHS contends that even if Kerr did establish a prima facie case of discrimination based on race or age, he did not overcome rebuttal evidence by establishing that TDSHS's stated reasons for termination were mere pretext.

Kerr contended that TDSHS's reason for terminating his employment was pretext because Guerrero did not actually report the missing book but simply answered questions about it when asked. Thus, Kerr argued, neither Guerrero nor he properly reported the missing book, meaning they each engaged in the same misconduct but were treated differently. Furthermore, he contends that TDSHS did not truly investigate the matter and that it simply targeted Harris and then himself, showing the termination of his employment was due to discrimination on the basis of race and/or age.

21

If an employee can establish a prima facie case of discrimination, "a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim." *Univ. of Tex. Health Sci. Ctr. at Hous. v. McNeely*, No. 06-21-00041-CV, 2021 Tex. App. LEXIS 8619, at *5 (Tex. App.—Texarkana Oct. 26, 2021) (mem. op.) (citations omitted). But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. *Id.* (citations omitted). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Id.* (citations omitted). *See Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 308 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("if the employer rebuts the presumption of discrimination, the burden of production shifts back to the employee to show that the employer's stated reason was a pretext for discrimination"). For that reason, "when jurisdictional evidence negates the prima facie case or . . . rebuts the presumption it affords, some evidence raising a fact issue on retaliatory intent is required to survive a jurisdictional plea." *McNeely*, 2021 Tex. App. LEXIS 8619 at *5 (citing *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 764). "In both direct-and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *McNeely*, 2021 Tex. App. LEXIS 8619, at *5-6 (citing *Hartranft v. UT Health Sci. Ctr.-Houston*, No. 01-16-01014-CV, 2018 Tex. App. LEXIS 4679, at *31 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).[21]

---

[21] Cases have held that a plaintiff is only required to raise a fact issue as to whether discrimination was "a motivating factor" in the decision to terminate employment. *McKenna*, 2016 Tex. App. LEXIS 4460, at *19 (citations omitted). *See Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 284 (Tex. App.—San Antonio 2011, no pet.) (citing *Quantum Chem.*, 47 S.W.3d at 480). However, a recent case stated

Assuming Kerr stated a prima facie case based on termination on the basis of race or age, any presumption raised by that has been rebutted because TDSHS produced evidence of misconduct establishing performance reasons for terminating Kerr's employment, i.e., failure to properly report the missing vital statistics book. *See Alamo Heights Ind. Sch. Dist.*, 544 S.W.3d at 792 ("The issue is whether the employer's perception of the problems—accurate or not—was the real reason for termination."). It was Kerr's burden to raise a fact issue that this explanation was a pretext and that he would not have been terminated but for his race or age. *See Alamo Heights Ind. Sch. Dist.,* 544 S.W.3d at 782; *Waggoner v. Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (the real issue is whether the employer reasonably believed the misconduct occurred and acted on it in good faith or rather, whether the employer did not actually believe the misconduct but instead used it as a pretext for an otherwise discriminatory dismissal).

In the matter before us, Kerr failed to raise a fact issue or produce any evidence that TDSHS's reasons for his termination were false or that the true reason for his termination was based on his race and/or age. First, the record contains evidence that Guerrero did report the missing book to Harris in 2013, meeting with her twice. This occurred before the conversation with General Counsel and House, during which Guerrero was asked about the missing book. Second, nothing in the record before us shows that TDSHS terminated Kerr for any reason other than his failure to properly and timely report the missing vital statistics book. Kerr points to TDSHS's allegations that the

---

"evidence of age as a motivating factor is not an element of the prima facie case; rather, it is the result. In other words, the plaintiff's establishment of a prima facie case leads to the inference that age is a motivating factor for the adverse employment decision because courts presume that the defendant's acts, if otherwise unexplained, are more likely than not motivated by impermissible factors such as age." *City of Richland Hills v. Childress*, No. 02-20-00334-CV, 2021 Tex. App. LEXIS 7684, at *12 (Tex. App.—Fort Worth Sep. 16, 2021, no pet.) (mem. op.) (citations omitted).

missing book was a privacy incident that could have led to the commission of fraud but says there is no evidence the information was used in such a manner. Even if that were true, as it appears to be, that fact does not create a factual dispute as to whether TDSHS acted in good faith when it terminated Kerr on that basis. *See Hicks*, 2021 U.S. Dist. LEXIS 220820, at *7-8 (no evidence of pretext because plaintiff's evidence did not create a dispute of fact as to employer's belief that plaintiff had violated its workplace safety policies). The *Position Statement* concerning Kerr's EEOC charge states that "[o]ther than [Kerr's] beliefs and perceptions, he provides no evidence that actions taken were based on extraneous factors such as race or age." We believe the same is true here. Kerr has not presented evidence sufficient to connect his dismissal to his race or age in any way. As such, even if Kerr did establish a prima facie case of discrimination based on race or age (which we have previously rejected as set forth above), he did not overcome TDSHS's rebuttal evidence by establishing that its stated reasons for termination were mere pretext. Accordingly, if we were to reach the issue, we would sustain TDSHS's second issue.

### APPELLEE'S MOTION FOR DAMAGES

Pending before this court is Kerr's post-submission *Motion for Damages for Frivolous Appeal.* By said motion, he requests that we award him damages in the form of an award of costs and fees incurred in responding to and defending this appeal because he feels TDSHS "crossed the line into bad faith" by appealing the trial court's denial of its plea to the jurisdiction. Without commenting further on the merits thereof, the disposition of TDSHS's issues adequately addresses those claims. Kerr's motion is denied.

**CONCLUSION**

Having sustained TDSHS's appellate issues, we reverse the trial court's order denying TDSHS's plea to the jurisdiction and render judgment granting that plea.

Patrick A. Pirtle
Justice

Quinn, C.J., joins the majority's discussion and disposition of the first issue and concurs in the result.

Doss, J., concurring.